# PORTER et ux., Respondents, v. ILLINOIS SOUTHERN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, March 23, 1909.

1. **RAILROADS: Fences: Pleading.** In an action against a railroad company for damage to the plaintiffs' crops caused by animals which came upon his fields from the defendant's right of way, where it was alleged that the animals came into plaintiffs' field by reason of the defendant's failure to erect and maintain fences and cattle-guards, this was sufficient after verdict so that it was not necessary to allege that the animals came upon the plaintiff's fields from the defendant's right of way on account of defendant's failure to maintain a fence and cattle-guards where it should maintain them.

2. **PRACTICE: Pleading: Objection to Evidence.** The practice of objecting to the introduction of evidence on the ground that the petition does not state facts sufficient to constitute a cause of action is only tolerated by the law; such an objection is well taken only in those cases where the petition is fatally defective after verdict.

3. **RAILROADS: Fences: Ownership.** Where a railroad company was operating a railroad, it was liable for failure to fence its right of way and it was immaterial whether it owned the road which it was operating or not.

4. ———: ———: **Waiver by Owner.** Where the owner of land through which a railroad company was constructing a railroad obtained permission to fence across the place where a cattle-guard should be, in order to protect his crops, but before he erected the fence he was forbidden by the company to proceed with the work and assured by it that cattle-guards would be erected, he did not thereby waive his right to damage for failure of the railroad company to maintain cattle-guards.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*C. J. Stanton & W. S. Anthony* for appellant.

*D. L. Rivers* and *R. C. Tucker* for respondent.

NORTONI, J.—This is a suit for damages alleged to have accrued to the plaintiffs by reason of animals escaping from the unfenced railroad right of way of defendant into the plaintiffs' fields, and destroying their crops. Plaintiffs recovered and the defendant appealed.

The first point for consideration relates to the sufficiency of the statement of the cause of action. The cause originated before a justice of the peace and the petition is somewhat informal, as is usual in those courts. Notwithstanding the informalities, we are of opinion that it contains averments of material facts sufficient to constitute a cause of action under the statute (sec. 1105, R. S. 1899, sec. 1105, Mo. Ann. St. 1906). No demurrer was interposed, and the only question with which we are concerned is the sufficiency of the cause of action stated, after verdict. After averring the defendant is a corporation operating a railroad, the petition alleges substantially that at the time of the grievances complained of, plaintiffs occupied a farm in Randolph township, in St. Francois county, through which farm defendant's railroad passed, and at the time, plaintiffs had on said farm growing and standing crops of corn, wheat, hay, etc. That defendant, although operating its railroad through their farm, neglected to erect and maintain lawful fences on the sides of its said railroad where the same ran through plaintiffs' fields on said farm in Randolph township aforesaid, and that by reason of the defendant's failure to erect and maintain fences and cattle-guards along and across its said railroad, as required by the statute, horses, mules, cattle and other animals came into and upon the fields and inclosed lands of the plaintiffs and destroyed various and sundry crops there growing and standing. The crops alleged to have been destroyed were wheat and corn in the fields, and hay and grain in the stack. The point made against the sufficiency of the statement

is, if we understand it, that it is insufficient for the reason it does not formally allege the "animals came upon the plaintiffs' fields at a place where the railroad passes through, along, or adjoining inclosed or cultivated fields or uninclosed lands." We do not concur in the view that the formal allegation referred to is absolutely essential to the statement of a cause of action, under the statute, for the loss of crops by the invasion of animals from the railroad right of way because of the railroad's failure to erect and maintain sufficient fences. Section 1105 of our statutes, R. S. 1899, in so far as pertinent here, provides that: "Every corporation . . . operating any railroad in this State, shall erect and maintain lawful fences on the sides of the road where the same passes through . . . cultivated fields . . . and also construct and maintain cattle-guards, where fences are required, sufficient to prevent horses, cattle, mules and other animals from getting on the railroad; and until fences . . . and cattle-guards as aforesaid shall be made and maintained, such corporation shall be liable in double the amount of all damages which shall be done . . . by reason of any horses, cattle, mules, or other animals . . . coming upon said fields . . . occasioned by the failure to construct or maintain such fences or cattle-guards." The statement of the cause of action sets forth the material facts: First, that the defendant was operating the railroad which passed through the plaintiffs' farm, and second, the farm appears to have been cultivated fields, within the meaning of the statute. In these fields there were growing, cultivated crops of corn and wheat, besides there were hay and grain in the stack. It avers, too, that the defendant had failed and neglected to erect and maintain fences along the sides of its railroad passing through the fields, as required by statute, and had also failed to erect and maintain a cattle-guard thereat; that the animals came into plaintiffs' fields and destroyed his crops by reason of the defendant's failure

to erect and maintain the fences and cattle-guards mentioned. This allegation necessarily implies, after verdict at least, that the animals came from defendant's right of way, for it is averred that they came into the fields because of the failure of defendant to erect fences along the sides of its road where it passed through the same. The allegation of the complaint is somewhat defective in its averment that the animals came into the fields from the railroad right of way, and might possibly have been so adjudged on demurrer. The attack on its sufficiency is not raised by demurrer, however. The objection was made *ore tenus* to the introduction of evidence on the ground the petition did not state facts sufficient to constitute a cause of action. This practice of challenging the sufficiency of the statement of a cause of action by oral objection, is only tolerated by the law. It is successful only in those cases where the petition is fatally defective after verdict. [State ex rel. v. Delaney, 122 Mo. App. 239; Hazeltine v. Smith, 154 Mo. 404.] There is no defect here in the cause of action. If there be any, it is a defect in the statement of a good cause of action; that is, a good cause of action defectively stated. In such circumstances, the averments of the petition are aided with all reasonable implications and intendments, by the verdict. Our statute of jeofail (sec. 672, R. S. 1899) provides that no judgment shall be reversed because there was omitted from the statement of the cause of action any averment or allegation without proving which the triers of the issue ought not to have given such a verdict. Indeed, this provision of our statute is only declaratory of the common law, to the effect that a verdict will aid a cause of action defectively stated, but not a defective cause of action. [Welch v. Bryan, 28 Mo. 30.] Although the complaint does not pointedly aver the animals came from the railroad right of way into plaintiffs' fields, it does aver that the defendant had failed to erect and maintain fences along the sides of the road where it passed

through plaintiffs' fields and that the cattle came into the fields because of the defendant's failure to erect and maintain such fences. It is essentially implied from this allegation that the cattle came from the right of way into the fields. This was a fact which it was necessary for the plaintiffs to prove before a verdict could be given for them. The presumption and intendment of the law is to the effect that the plaintiffs did prove this fact and thus supplied the defective allegation of the petition. When it appears, though the petition be defective, a verdict could not have been given without proof of the matter omitted to be stated, the defect is cured by the statute and the judgment will not be reversed therefor. [Richardson v. Farmer, 36 Mo. 35.] The statement is certainly sufficient after verdict and the assignment will be overruled.

The evidence tended to prove that plaintiff occupied a farm in Randolph township, St. Francois county. The farm consisted of cultivated fields, on which plaintiffs had growing crops of corn, wheat, hay, etc. They also had hay and grain in the stack thereon, not far distant from the railroad right of way. It appears the railroad passed through the farm for about a quarter of a mile. The railroad had recently been constructed and was wholly unfenced. Just who or what company had constructed the road or owned the same, does not appear in the record; nor does it appear how the defendant came into possession; whether by lease, purchase, or otherwise. It does conclusively appear, however, that the defendant company took possession of the road on August 15th and operated it from that day thereafter; that it neglected to erect fences on either side of the road where the same passed through the plaintiffs' cultivated fields, and had also neglected for several months to install a cattle-guard at the public road crossing, adjoining plaintiffs' farm. As defendant was operating the road, liability attached to it for failure to fence by the express words of the statute. It was immaterial who owned the

road. [R. S. 1899, sec. 1105.] Several witnesses gave
testimony to the effect that cattle were seen to pass from
the public road down the railroad right of way and over
the point where the law imposed upon the defendant the
duty to install and maintain a cattle-guard. Having thus
entered upon the defendant's right of way because of its
failure to install the cattle-guard, the animals passed
from the right of way into plaintiffs' fields because of
the defendant's failure to erect fences along the sides
of its road. It seems the plaintiffs suffered considerable
loss by the animals destroying the hay and grain in the
stack and their crops standing in the fields. All of
which occurred after August 15th and prior to the fol-
lowing January first. The evidence discloses plaintiffs
made several complaints to the defendant's civil engi-
neer in charge of the construction of the road as to the
frequent invasions of cattle, and insisted upon fences and
cattle-guards being erected at once. Finally the civil
engineer suggested that the plaintiffs might erect a tem-
porary fence or gate across the railroad track adjoining
the public road crossing, and thereby prevent the cattle
from going upon the right of way at that point. It does
not appear, however, that plaintiffs contracted to erect
such fence or gate, nor that he even agreed to do so.
Although he was licensed by the civil engineer to erect
a temporary structure across the track for that purpose,
the evidence falls short of showing that he assumed any
obligation in that behalf. A few days thereafter, plain-
tiffs visited the point mentioned and began the construc-
tion of a temporary gate across the track. About the
time operations were commenced in that behalf, the de-
fendant's roadmaster appeared, and after learning what
the plaintiffs were about to do, forbade them to proceed
further with the work. The roadmaster assured plain-
tiffs that he would have a cattle-guard erected immedi-
ately at the point in question, and told them not to
construct a gate or fence across the tracks. It seems,
too, trains commenced running about this time and un-

Porter v. Railway Co.

der these circumstances, of course it would have been impossible to maintain a fence across the track. On this testimony, it is argued by the defendant that the plaintiffs waived their right to recover for damages accrued because of the defendant's failure to erect a fence or cattle-guard. It is no doubt true that it is competent for a land-owner to waive his right in this respect and where one contracts with a railroad and assumes the obligation for a consideration to erect the fence for the railroad company along his land at a point where the law affixes the obligation on the railroad to fence, he may be estopped thereby from asserting his right for damages accrued on account of a failure to fence. In such circumstances, plaintiff having assumed the obligation to erect the fence, of course his injury results from his own default and not from that of the railroad company. [Ellis v. Pacific R. R. Co., 48 Mo. 231; Thomas v. Han. & St. J. Ry. Co., 82 Mo. 538.] However, the principle of those cases is without influence here, for the reason it does not appear that the plaintiffs had contracted or assumed any obligation whatever in respect of erecting a fence across the track at the point where the law imposed the duty on the defendant to install a cattle-guard. The only evidence given on the subject was that of one of the plaintiffs, which was to the effect that he had merely received permission to construct a temporary fence across the track in order to protect his crops, as his efforts to induce the railroad to discharge its duty in that behalf had been unavailing. Upon commencing to erect the temporary fence, his license was revoked by the roadmaster, who certainly had authority to forbid obstructions about to be erected upon the roadway.

The appeal is wholly devoid of merit and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.