GUY HARRIS. Respondent, v. QUINCY, OMAHA &
KANSAS CITY RAILROAD COMPANY AND
J. G. TRIMBLE, Appellants.

Kansas City Court of Appeals, May 19, 1913.

1. **MALICIOUS PROSECUTION: Perjury: Statute.** The plaintiff
sued to recover actual and punitive damages for an unsuccess-
ful prosecution for perjury instituted by the defendants. The
defendants' railroad ran through the plaintiff's father's farm,
and they having failed to keep the fence, etc., in repair as
required by law, some of the plaintiff's father's live stock were
killed for the loss of which suit was commenced. The plain-
tiff was charged with giving testimony in that suit regarding
the trade-mark used on the defendants' rolling stock, and,
when put upon trial, was acquitted. *Held*, that since the
testimony of the plaintiff was material to one of the issues
raised in his father's petition, it was material within the
meaning of the statutory definition of perjury. Hence the
plaintiff cannot recover in damages.

2. ————: ————: ————: **Duty.** The R. S. 1899, sec. 1105,
imposes a duty on a railroad company holding its franchise
from the state, so that it cannot escape responsibilities and
liabilities, which it assumed in accepting the franchise, by
ceasing to operate the road and leasing it to another company.

3. ————: ————: **Burden of Proof.** In an action for malicious
prosecution the burden is on the plaintiff to plead and prove
that the defendants without probable cause and with malice
caused him to be prosecuted for the crime of perjury.

4. **DEFINITIONS: Probable Cause.** Probable cause is any such combination of facts and proofs as may fairly lead the reasonable mind to the belief (and the person relying on it must believe) that in the absence of hitherto known qualifying or rebutting evidence the prosecution ought to be successful.

5. **DAMAGES, DOUBLE: Killing of Live Stock: Statute.** A railroad company which, as lessee, operates its trains over the road of another company, is liable in double damages under the statute for killing live stock which came on the track in consequence of the absence of lawful fences.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis*, Judge.

REVERSED.

*Hall & Hall* and *Dudley & Selby* for appellants.

(1) A citizen in good faith and without malice, under circumstances strongly tending to show guilt, instituting a criminal prosecution, should not be mulcted in damages because afterwards, upon a full investigation, the suspicious circumstances are explained, and the innocence of the party accused made apparent. Our courts incline to the encouragement of criminal prosecutions, when instituted in good faith, without malice, and for the purpose of punishing violators of the law, and suits for malicious prosecution are not favored. Chicago, R. I. & P. Ry. Co. v. Pierce, 98 Ill. App. 368; Smith v. Glynn, 144 S. W. p. 149; Also Ball v. Rowles, 93 Cal. 222-27; Amer. S. Rep. 174 and note. (2) "The holding of the accused person by a committing magistrate as well as the finding of an indictment by a grand jury is generally accounted evidence of probable cause" (Burdick on Torts). Ross v. Hixon, 46 Kan. 550, 26 Am. St. R. 123, with valuable note; Perkins v. Spaulding, 132 Mass. 218, 65 N. E. 72. (3) Advice of counsel is evidence of probable cause: Stewart v. Sonnebourn, 98 U. S. 187; Stubbs v. Mulholland, 168 Mo. 47; Smith v. Glynn, 144 S. W.

149. (4) The fact that the counsel was defendant's regular attorney should make no difference. Kansas, etc. Co. v. Gallaway, Ark., 74 S. W. 521. (5) In most jurisdictions, the failure of the prosecution, while a fact which the plaintiff must establish in order to make out his case, is not evidence tending to show the want of probable cause (Burdick on Torts). Stewart v. Sonnebourn, 98 U. S. 187; Thompson v. Rubber Co., 56 Conn. 493, 16 At. 554; Anderson v. Friend, 85 Ill. 135; Philpot v. Lucas, 101 Ia. 478; Stone v. Cracker, 24 Pick (41 Mass.), 81; Boeger v. Langerberg, 97 Mo. 390 (See note & 10 Am. St. R. 322); Apgar v. Woolstone, 43 N. J. I. 57; Wilard v. Holmes, 142 N. Y. 492; Eastman v. Montas, 32 Or. 291; 67 Am. St. R. 231; Cullen v. Hanisch, 114 Wis. 24.

*Platt Hubbell* and *George Hubbell* for respondent.

A trade-mark is not merely an advertisement sign —it means ownership—the opinion rendered in this cause is in conflict with the supreme court of Missouri as well as all the authorities. "The object of a trade-mark is to point out distinctly the origin or ownership." Oakes v. Candy Co., 146 Mo. 391, l. c. 397; Filley v. Fassell, 44 Mo. 168; 28 Am. & Eng. Ency. of Law (Second Ed.), 346, 347; Anderson's Law Dictionary, 1044; Trade-mark Cases, 100 U. S. 92-99, 25 Law. Ed. 550.

JOHNSON, J.—This is an action for malicious prosecution. Plaintiff recovered judgment for $2500 actual and $2500 punitive damages and defendants appealed. The action is an outgrowth of an unsuccessful prosecution of plaintiff for perjury. The defendant railroad company, acting by its general attorney, the defendant Trimble, procured the arrest and prosecution of plaintiff. At the conclusion of the evidence

introduced at the trial of that case the court gave a peremptory instruction to the jury to return a verdict of acquittal. The ground of the ruling that the State had failed to make a case against plaintiff was that the alleged perjured testimony was not material to the issues of the case in which the testimony was given. After his acquittal plaintiff commenced this action to recover damages on the ground that his prosecution was without probable cause and malicious.

The material facts of the case are as follows: In August, 1904, Warren Harris, the father of plaintiff, sued the defendant company under section 1105, Rev. Stat. 1899, to recover double damages for live stock killed by trains operated on defendant's railroad at places where the railroad crosses his farm in Grundy county. The petition contained four counts and the cause pleaded in the first count was for the killing of a horse on December 9, 1901. It was alleged in the petition that "for several years prior to the occurrence of the events hereinafter mentioned, the defendant owned and operated, and now owns and operates a certain railroad known as the Quincy, Omaha & Kansas City Railroad, together with the tracks, cars, locomotives and appurtenances thereto belonging, and was and now is, for hire, a common carrier of passengers and freight. For several years prior to the dates hereinafter mentioned, and at all times herein mentioned, the defendant ran and operated, and now runs and operates its said railroad in and through a portion of the plaintiff's farm in Trenton township, Grundy county, Missouri.

"In so passing in and through said portion of plaintiff's said farm defendant's railroad passes through, along and adjoining inclosed or cultivated fields, all of plaintiff's farm being inclosed or cultivated. None of plaintiff's farm is within the limits of an incorporated city or town.

"It was then and there the legal duty and obligation of the defendant to erect and maintain lawful fences on the sides of its railroad track and right of way, where the same passes through, along and adjoining plaintiff's said farm; and also in connection with such fences, to construct and maintain cattle guards reasonable and ordinarily sufficient to prevent horses, cattle, mules and all other animals from passing over the same."

The other three counts of the petition were based on the killing of live stock in the years 1903 and 1904. The answer admitted the incorporation of defendant company and denied every other allegation of the petition.

At the trial of that case which began September 28, 1904, one of the attorneys of the railroad company in his opening statement to the jury asserted that plaintiff would be unable to prove that at the time of the killing of the horse the defendant was operating the railroad or was the owner of the train that killed the animal. The evidence in the record before us shows that this statement of the attorney was accurate. The Quincy, Omaha & Kansas City Railroad Company was the owner of the railroad in December, 1901, but the road was being operated by the receivers of another corporation—the Omaha, Kansas City and Eastern Railroad Company,—under a lease executed by the owner on June 25, 1897. The lessor regained possession in January, 1902, before the killing of the stock for which Harris claimed damages in the second, third and fourth counts of his petition and after the origin of the cause pleaded in the first count. During the period of the operation of the road by the lessee and its receivers the rolling stock used on the road was the property of the lessee and was marked with its name and initials. None of the locomotives or cars bore the name or initials of the lessor company but it appears that the lessee, in addition to placing its name

and initials on its cars and engines, also adorned them with certain advertising signs or trademarks that had been used since the construction of the road as its distinctive trademarks. The trademark in general use at the time of the execution of the lease was in the form of a diamond in which were the letters "O. K." and in smaller letters the words "Quincy Route." There is evidence tending to show that this device, the use of which was continued by the lessee not only symbolized the railroad but had become identified with the proprietorship of the lessor company.

During the introduction of the plaintiff's evidence in the Warren Harris case, his son, the present plaintiff, was examined as a witness and testified as follows:

"Q. Now the engine and cars in 1901, December, 1901, and prior thereto in that year was marked how? A. With Q. O. & K. C. letters.

"Q. You saw them on the tracks there? A. Yes, sir, the engines were marked Q. O. & K. C. and have been for years."

This was the only evidence offered by Warren Harris on the subject of the operation of the road on the date the horse was killed. The defendant offered witnesses who testified that the railroad was operated at that time by the receivers of the lessee company and that none of the rolling stock was marked with Q. O. & K. C. letters but with the name and letters of the Omaha, Kansas City & Eastern Company. At the close of the evidence the court overruled the demurrer to the evidence offered by defendant on the ground that the testimony of plaintiff we have quoted was sufficient to take the case to the jury on the issue of whether or not the defendant company was operating the road on the date the horse was killed. Counsel for plaintiff argued that since the evidence disclosed that the defendant was the owner and lessor of the road it would be liable for damages resulting from a negligent

breach of the fencing law regardless of all other considerations, but the court rejected that view and, as stated, ruled that the case would be sent to the jury on the issue of whether or not defendant was operating the railroad. Thereupon the plaintiff dismissed the first count of the petition and went to the jury on the remaining counts. Afterward he brought a new suit to recover damages for the horse and was allowed to recover on the theory that defendant's ownership of the road made it liable for a negligent breach of the fencing law. Defendant appealed and we affirmed the judgment (124 Mo. App. 45), holding, as stated in the syllabus, that "a railroad company cannot avoid its liability for fencing its track by leasing its railroad or licensing another to operate it; but it will be liable for the killing of stock by the receiver of its lessee."

In this decision the rule was announced that duties imposed by section 1105, Rev. Stat. 1899, on railroad companies are of a character to fall within the purview of the accepted and wellknown doctrine that a railroad company holding its franchise from the State cannot escape responsibilities and liabilities which it assumed in accepting the franchise, by ceasing to operate the road and leasing it to another company. (McCoy v. Railway, 36 Mo. App. 445, and authorities cited.)

Immediately after the quoted testimony of plaintiff was elicited defendant Trimble, as general attorney for the defendant company, interviewed the prosecuting attorney and requested that plaintiff be arrested and prosecuted for the crime of perjury. On a full investigation of the case the prosecuting attorney concluded that perjury had been committed by plaintiff and began the prosecution on an affidavit made and filed by Trimble. As stated, the court, at the conclusion of the evidence introduced at the trial of that case held, in effect, that the testimony of plaintiff was false, but as it related to an immaterial fact

it was not perjury within the legal definition of that term.

There are other facts in the record but those we have stated control the disposition of the case.

To maintain this action the burden was on plaintiff to plead and prove that defendants without probable cause and with malice caused him to be prosecuted for the crime of perjury. The elements of want of probable cause and malice are essential to his cause of action and without their co-existence the action cannot be sustained. (Christian v. Hanna, 58 Mo. App. 37.) As was said by Lord MANSFIELD in Farmer v. Darling (4 Burr. 1791) "the foundation of the action was malice" and "malice, either express or implied, and the want of probable cause must both concur."

Malice alone will not support the action. The motive of the prosecutor becomes material only when it appears that he procured the prosecution of the plaintiff without probable cause. Probable cause has been defined as "any such combination of facts and proofs as may fairly lead the reasonable mind to the belief (and the person relying on it must believe) that in the absence of hitherto unknown qualifying or rebutting evidence the prosecution ought to be successful." Bosch v. Miller, 136 Mo. App. 1. c. 490.

Another definition is that "the reasonable cause which will relieve a prosecutor from liability is a belief by him in the guilt of the accused, based upon circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious person." (Christian v. Hanna, supra; Pinson v. Campbell, 124 Mo. App. 260; Wilkerson v. McGhee, 153 Mo. App. 343.)

To sustain an action for malicious prosecution the failure of the proceedings against the plaintiff must be pleaded and proved and such failure is not evidence of want of probable cause. (Stewart v. Sonneborn, 98 U. S. 187.) Reasonable cause to believe a person guilty

of a crime may be consistent with the innocence of the accused. As is said in Railway Co. v. Pierce, 98 Ill. App. 368: "A citizen in good faith, under circumstances strongly tending to show guilt, instituting a criminal prosecution, should not be mulcted in damages because afterwards, upon a full investigation, the suspicious circumstances are explained and the innocence of the party accused made apparent. Our courts incline to the encouragement of criminal prosecutions, when instituted in good faith, without malice, and for the purpose of punishing violators of the law and suits for malicious prosecution are not favored."

Notwithstanding the discharge of the plaintiff, if the only reasonable inference that may be drawn from the evidence is that the defendant had reasonable ground for believing him guilty, the court should have directed a verdict for the defendant. (Smith v. Glynn, 144 S. W. 149; Stubbs v. Mulholland, 168 Mo. 47.) And *a fortiori* if the conceded facts and uncontradicted evidence will admit of no other reasonable conclusion than that the plaintiff, notwithstanding his discharge, in fact was guilty of the crime, the existence of probable cause should be declared as a matter of law.

With these rules of law in mind we turn to an analysis of the facts we have stated. Plaintiff had lived with his father on that farm all his life and was familiar with the facts relating to the rolling stock that had passed over the track during the period of the operation of the road by the Omaha, Kansas City & Eastern Railroad Company. He does not attempt to deny that when he gave the testimony in issue he knew that the locomotives and cars did not bear the words or initials of defendant's name. He endeavored to convey the thought that defendant was operating, or, at least, owned the trains that ran over the road in that period and was so understood by the trial judge who overruled the demurrer to the evidence on the ground that plaintiff's statement raised an issue of

fact as to the operation of the road. His counsel in the endeavor to excuse him give a delphic meaning to his testimony. They say that because he was asked to state how the rolling stock was "marked" he must have understood that he was being asked about trademarks, just as a cowboy if asked about the marks on cattle would think of cattle brands. But that explanation will not hold water. The questions and answers are susceptible of but one meaning, i. e., that the engines and cars bore the initials of defendant's name and, therefore, were the property of defendant. The inference is very strong that plaintiff knowingly testified to a falsehood. We exonerate his attorneys from participation in his deception and attribute to zeal for their client their present attempt to put a hidden, double meaning into their questions which, if purposely injected, would have made them parties to a successful effort to deceive the court.

But it is argued that plaintiff was not guilty of perjury for the reason that the testimony was not material to the issues of the case. The statute (sec. 4344, Rev. Stat. 1909) provides that "every person who shall wilfully . . . testify falsely . . . to any material matter upon any oath . . . legally administered in any cause . . . before any court . . . shall be deemed guilty of perjury." False testimony as to an immaterial or improper matter is not perjury. (Hinch v. State, 2 Mo. 158; State v. Shanks, 66 Mo. 560.) But if the false testimony be material to any proper matter of inquiry in the case it will be deemed perjured testimony if wilfully uttered with knowledge of its falsity. (State v. Lavalley, 9 Mo. 834; State v. Ackerman, 214 Mo. 325.) And it need not tend directly to prove the issue. (State v. Moran, 216 Mo. 550.)

"The fact that the evidence given did not affect the mind of the court in rendering judgment is no defense, as the only question to be determined on a charge of perjury is whether the evidence might have

affected the decision.'' (See note to State v. Miller, 3 Am. & Eng. Ann. Cases, p. 945.) The test as to materiality is whether the false testimony could have influenced the tribunal in the determination of the case. The pleadings presented two issues with reference to the liability of defendant for the negligent and injurious breach of the fencing statutes, i, e., first that defendant owned the road and, therefore, was liable as owner and lessor and, second, that it was liable as the operator of the train that killed the horse. A railroad company which, as lessee, operates its trains over the road of another company is liable in double damages under the statute for killing live stock which came on the track in consequence of the absence of lawful fences. (Sec. 3145, Rev. Stat. 1909; Farley v. Railway, 72 Mo. 338; Porter v. Railway, 137 Mo. App. 293.) If Warren Harris could have proved that defendant was operating the train that killed his horse he would have had clear sailing on that branch of his case and, no doubt, he tendered that issue in his petition in the hope that he might be able to prove the allegation and avoid the uncertainty that existed in the law at that time over the question of the liability of a lessor company for injuries caused by a violation of the fencing law. The false testimony, therefore, had a direct bearing on an issue tendered by the petition and which remained in the case until the dismissal of the first count which did not occur until the court had ruled, in substance, that such issue should be submitted to the jury on the false testimony alone. It can make no difference that Warren Harris was entitled to recover on the other ground; he was trying to recover on each and both of the issues tendered in the petition, and since the testimony of plaintiff was material to one of them, it was material to the case within the meaning of the statutory definition of perjury.

These considerations compel the conclusion that the evidence shows as a matter of law that defendants

had probable cause for the prosecution of plaintiff, and since there is a complete failure of proof as to one of the indispensable elements of an action for malicious prosecution, the judgment cannot be allowed to stand. Accordingly it is reversed.

All concur.