STATE of Missouri, Respondent,

v.

Charles Edgar BARKWELL, a/k/a Billy
Jack Carter, Appellant.

No. KCD 30007.

Missouri Court of Appeals,
Western District.

June 29, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 31, 1979.

Application to Transfer Denied
Sept. 11, 1979.

David V. Bear, III, Bear, Hines & Thomas, Columbia, for appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

WASSERSTROM, Judge.

The information here charged Barkwell with having committed perjury in a prior proceeding instituted by him for a change of name under Section 527.270, RSMo 1969 and Rule 95.01. Barkwell waived a jury and upon a bench trial the court found Barkwell guilty of perjury as charged. Barkwell now appeals to this court.

In the change of name proceeding, Barkwell's verified petition gave the following as his reason for desiring a change of name:

"4. The reason that Petitioner desires such change of name is that his present name has subjected him to ridicule and embarassment [sic], to-wit:

A. That Searcy Richards Barkwell and Raymond Barkwell, brothers of Petitioner, were both convicted felons and served time in the Missouri State Penitentiary; that the conduct of said brothers, coupled with the prison records of said brothers has caused Petitioner undue embarassment [sic], ridicule, mental consternation, and has caused him to be held in contempt in the eyes of many members of the community.

B. That the name of Barkwell has caused him to lose job opportunities and business opportunities.

C. That Petitioner has no criminal record.

D. That Petitioner is of high moral character, the owner of real estate, and is undeserving of the ridicule and contempt to which he has been subjected.

E. That Petitioner is not indebted to any bill creditors.

F. That two individuals named Barkwell serve as bail bondsmen, in Boone County, and this fact causes the Petitioner to be awakened and bothered needlessly by telephone calls at all times of the night."

In support of those allegations Barkwell gave supporting testimony in the change of name proceeding, as follows:

"Q. Now you've alleged certain matters in your Petition, including the fact that your name is presently Charles Edgar Barkwell. You've also alleged that this name has subjected you to ridicule and embarrassment throughout your life, is that correct?

A. Yes.

Q. And in particular that your brothers, Searcy Richard [sic] Barkwell and Raymond Barkwell are both deceased but they're convicted felons and served time in the Missouri State Penitentiary?

A. Yes.

Q. And they've lived in this area, is that correct?

A. Yes.

Q. And that there [sic] conduct coupled with their prison records has throughout your life caused you a great deal of ridicule and contempt and to be held up in that respect to the community, is that correct?

A. Yes.

Q. And has caused you mental anguish and consternation, is that correct?

A. Yes, sir.

Q. Furthermore, you have even had situations where the name of Barkwell caused you to loose [sic] business opportunities and job opportunities, is that correct?

A. Right, yes.

Q. The fact that you were named Barkwell and were associated with the other Barkwells who were . . had criminal records?

A. Yes.

Q. You have no criminal record whatsoever do you?

A. No, sir.

Q. Never even been arrested for a criminal offense have you?

A. No.

Q. And you are a person, you believe, of high moral character and you are held in high esteem in other areas where you are not known by your brothers past record, is that correct?

A. Yes.

Q. And therefore you feel that you're undeserving of the ridicule and contempt to which you've been subjected, is that correct?

A. Yes."

The information charges and the record in this perjury case shows that the said sworn allegations and testimony were false in that Barkwell in fact had the following series of criminal convictions:

7/29/58 — common assault
11/ 3/59 — careless and reckless driving
11/24/59 — driving under revocation
11/21/61 — common assault
10/26/65 — DWI
5/22/67 — DWI
2/28/68 — driving under revocation
1/18/71 — felony DWI—third offense

Barkwell does not deny making the sworn statements quoted above, nor does he deny that those statements were false. Rather, his defenses in the trial court were and his points on appeal in this court remain: (1) that the false statements were not material, and (2) that the state failed to prove that he knew his testimony to be false at the time he gave it.

I.

MATERIALITY

When a person files a petition for change of name, as Barkwell did here, the applicable statute and rule makes his reason for the desired change a material matter to be alleged and proved by him. Both Section 527.270 and Rule 95.01 require that the petition be verified by affidavit and set forth "a concise statement of the reason for such desired change." The allegations of paragraph 4 of Barkwell's petition in the change of name proceeding were responsive to that firm requirement.

It appears obvious that the allegation set forth in subparagraphs A through D of that paragraph 4 are interrelated and constitute a single reason. Barkwell was plainly stating that he was being confused in the minds of the public with his two brothers, that this confusion was unfair to him because unlike the brothers, Barkwell himself had "no criminal record," was of "high moral character" and was "undeserving of the ridicule and contempt to which he has been subjected." .

By those statements and his supporting testimony in open court, Barkwell was attempting to picture his brothers as black sheep of the family, and himself in contrast as faultless and the innocent victim of a family name which the brothers had besmirched. Yet, those statements and testimony undertaking to distinguish himself from his brothers were blatantly false. Although his brothers may have had records of criminal convictions, so did he. Thus, Barkwell plainly lied and perjured himself as to a matter of fact which was made by statute and court rule of central importance to the change of name proceeding.

It is true that Barkwell also gave another reason for desiring a change of name, that being that he was being confused with two bail bondsmen in Boone County named Barkwell, which caused Charles Barkwell (the petitioner) to be awakened and bothered needlessly by telephone calls. How-

ever, that alleged additional reason and Barkwell's testimony in support thereof does not render immaterial the false testimony given by him to the effect that he had no criminal record. His false testimony in that regard remains material for two separate independent reasons.

■ In the first place, false testimony as to one point is material and can be the subject of perjury even though that testimony may not have been necessary to the result and although that result could have been obtained even without the false testimony. 70 C.J.S. Perjury § 11 p. 467. As stated in *State v. Swisher*, 364 Mo. 157, 260 S.W.2d 6 (banc 1953), quoted from *State v. Brinkley*, 354 Mo. 337, 189 S.W.2d 314 (1945), the "perjured testimony need not bear directly upon the main issue, or cover the whole subject of inquiry. It is sufficient if the testimony . . . have a legitimate tendency to prove or disprove *any* material fact pertinent to the inquiry." (Emphasis added). This point is well illustrated by *Harris v. Quincy, O & K.C.R. Co.*, 172 Mo.App. 261, 157 S.W. 893 (1913), a situation analogous to the one at bar. In *Harris*, plaintiff's father filed a suit against the defendant railroad for damage to livestock. In his petition, he advanced two alternative theories of recovery, and at trial plaintiff testified falsely in support of one of those theories. Defendant railroad then instituted an unsuccessful perjury suit because of that false testimony. Plaintiff subsequently countered with a suit for malicious prosecution, arguing that defendant railroad did not have probable cause to believe that he had testified falsely as to a material fact since his father was entitled to recover on the alternative theory. In rejecting that argument, the court stated:

> "It can make no difference that Warren Harris was entitled to recover on the other ground; he was trying to recover on each and both of the issues tendered in the petition, and, since the testimony of plaintiff was material to one of them, it was material to the case within the meaning of the statutory definition of perjury."

■ The second reason why Barkwell's false testimony remains material is that the truth with respect to his prior criminal convictions would have been pertinent impeachment to his testimony concerning the alleged harassment by phone calls intended for the two bondsmen. Missouri law is well established that a false denial of prior convictions is material on the issue of credibility and therefore can serve as a basis for a perjury conviction. *State v. Swisher, supra; State v. Moran*, 216 Mo. 550, 115 S.W. 1126 (1909). The trial judge (who was the same one who presided over the change of name proceeding) was therefore quite correct in holding: "In the change of name proceeding, the questions as to prior convictions having been asked and false answers given, the trier of fact was deprived of material information in judging the credibility of the witness and hence the validity of any or all of the reasons given for the requested change of name."

Notwithstanding all of the foregoing, Barkwell argues that nothing stated by him by way of reasons for wanting a change of name was material, and in support of that contention he relies upon *Matter of Natale*, 527 S.W.2d 402 (Mo.App.1975). That case is readily distinguishable. In *Natale*, the petitioner gave a truthful reason for change of name, and the truthfulness of that reason was in no way in doubt. The only question in the case was whether the reason given was an acceptable one upon which a court should grant relief. The holding was simply that a court has little discretion as to what constituted a proper reason for a change of name. *Natale* does not hold that a petitioner can give a false or no reason and still obtain the order granting a change of name. To the contrary, the court in *Natale* at p. 406 expressly states that "a name change petition is not self executing." As to the power of the court to pass on the credibility of the petitioner, note also *In re Reed*, Missouri Court of Appeals, Eastern District, 584 S.W.2d 103, 1979, where the court made the observation that "Mr. Reed evinced sincerity."

Nor is *In re Application of Knight*, 537 P.2d 1085 (Colo.App.1975) in point. In that case, Knight, a prison inmate, petitioned to change his name to Sundiata Simba, so as to "acknowledge the heritage of [his] past, and to fortify [his] acceptance of [his] religious beliefs as required by [his] faith." That reason did not involve as an ingredient an alleged lack of a criminal record. That contrasts sharply with Barkwell's main alleged reason here, which does rely on his claimed innocence of any criminal record. Moreover, the trial court in *Knight* accepted Knight's statement as to his reason and expressed no doubt on its honesty. Therefore, Knight's credibility was not in question. Still further, the appellate court in *Knight* did not hold Knight's incarceration and criminal record to be immaterial, but only that the prejudicial effect upon prison discipline and law enforcement of the requested name change had not been sufficiently developed, and the case was remanded for evidence on that point. No such issue is present in the instant case.

## II.

## KNOWLEDGE OF FALSITY

In support of his second point, Barkwell relies upon a contention that he misunderstood what was meant by the terms "convictions" and "criminal record." His testimony in that connection was that his attorney in the change of name proceeding, Mr. John Schwabe, told him that in order to have a criminal offense, "you had to go to the penitentiary, something like that, to be classified as that because I asked him to come under criminal and he said to go to jail or pay a fine it wasn't a criminal offense when we was [sic] preparing this name change." Barkwell further testified that the way Schwabe explained it to him, "the only definition of a criminal offense was if you went to the penitentiary." Barkwell further testified that he believed at the time of the change of name proceeding that he had not been convicted of a "criminal offense" and that "I thought you had to go to the penitentiary, something like that to be a criminal."

By way of rebuttal, the state offered a stipulation of the parties that "our evidence would be that Attorney John Schwabe would testify that he does not recall a conversation in which he explained what a criminal offense was and that it was only punishable by if he went to the penitentiary. He does not recall that conversation."

■ Whether this evidence showed a misunderstanding on the part of Barkwell, so to excuse him, was a question of fact for the fact-finder. *Seymour v. United States*, 77 F.2d 577, 582 (8th Cir. 1935); *United States v. Bonacorsa*, 528 F.2d 1218 (2nd Cir. 1976); *United States v. Long*, 534 F.2d 1097 (3rd Cir. 1976); *Gauthier v. State*, 496 S.W.2d 584 (Tex.Cr.App.1973); *May v. State*, 125 Tex.Cr.App. 194, 67 S.W.2d 266 (1934); *Cowart v. State*, 508 S.W.2d 613 (Tex.Cr.App.1974); 60 Am.Jur.2d Perjury, § 9, p. 972. The evidence here taken as a whole was amply sufficient to justify a conclusion that defendant's false statements were not the result of misadvice from his lawyer or of an honest mistake, but to the contrary were made with a correct apprehension by Barkwell of the true meaning of "criminal offense" as that term is properly defined and commonly understood.

There is, however, another and more serious problem connected with this point. Although the trial judge as the trier of the facts could have found that Barkwell did not truly misunderstand the meaning of the terms in question, the judge did not do so. Instead, he expressly refused to consider the question, saying in his memorandum opinion: "Because neither a mistake of law nor advice of counsel appears to be a defense, the only real issue herein appears to be the issue of materiality of the denial of a prior criminal record." That ruling constituted plain error which must be considered under Rule 27.20(c) even though not raised by Barkwell.

■ If Barkwell's testimony be believed, then he had no criminal intent and he cannot be found guilty of perjury. A person who testified falsely but in good

faith with the honest belief he is telling the truth is not guilty of perjury. 60 Am. Jur.2d Perjury, § 10, p. 972. Further, advice of counsel as to matters presenting a question of law may constitute a defense to a charge of perjury. 70 C.J.S. Perjury § 17b(5) p. 475. So, the trial court refused to consider an issue which could exonerate Barkwell of perjury if found in his favor.

Because of the error just noted, the judgment is reversed and this cause remanded for a new trial.

SHANGLER, P. J., concurs.

CLARK, J., dissents in separate opinion filed.

CLARK, Judge, dissenting.

I respectfully dissent from the majority opinion.

While the majority concludes that Barkwell's conviction may not stand because the trial judge refused to consider the defense of professed ignorance as to the true meaning of the terms "convictions" and "criminal record," the issue of materiality poses a significant and fundamental issue of trial error. On the evidence adduced, the state did not, in my view, sustain the requisite burden of proof to support a conviction for the offense of perjury and the defendant should be discharged.

The offense of perjury, defined by statute, Section 557.010, RSMo, is falsely swearing before a court, public body or officer to any material matter. The essence of the crime of perjury is the willful false swearing to a substantially definite material fact and the burden is on the state to show that the false testimony was material to the issue being resolved. *State v. Dineen*, 203 Mo. 628, 102 S.W. 480 (1907). The fact that the testimony was received in evidence is insufficient, standing alone, to meet the burden of establishing materiality. *State v. Swisher*, 364 Mo. 157, 260 S.W.2d 6 (banc 1953).

While the issue of materiality is one of law for the trial court, materiality must be established by evidence and cannot be left to presumption or inference. *State v. Ro-*

berson, 543 S.W.2d 817 (Mo.App.1976). To prove materiality, sufficient evidence must be presented to inform the trial court wherein and how the false testimony was material. *State v. Roberson, supra.* A material false statement either directly affects the result of the matter at issue or is of sufficient probative import to the inquiry so that further fruitful investigation would have occurred. *United States v. Freedman*, 445 F.2d 1220 (2nd Cir. 1971). The gist of materiality is the influence on judicial action as to the issue before the court. *United States v. Masters*, 484 F.2d 1251 (10th Cir. 1973).

The burden was on the state in this case, as in any other criminal cause, to introduce evidence sufficient to establish every constituent element of the offense charged. *State v. Patterson*, 534 S.W.2d 847 (Mo.App. 1976). As indicated above, the constituent elements of the offense of perjury charged against Barkwell are that he (a) swore falsely, (b) before a court, public body or officer, (c) as to a material matter.

The information by which the charge here was lodged against Barkwell tacitly acknowledged the necessity for proof of materiality as a substantial element by the following allegation:

"[and] that Judge did not have to grant the change of name if he found it detrimental to the interests of any other person and in this case since Barkwell was prohibited from ever operating a motor vehicle in the State of Missouri, this name change was detrimental to the citizens of the State of Missouri and to the Department of Revenue Motor Vehicle Division; "

In his opening statement, the assistant prosecuting attorney reaffirmed the proposition at issue by stating:

"[the] argument here is whether or not this was material to the name change and the State feels that it was and therefore has instituted this action."

Despite the foregoing, the only evidence offered by the state at trial consisted of the court file and trial transcript in the change

of name proceeding and a certified record of Barkwell's prior convictions. No evidence whatever was offered to show "wherein and how" Barkwell's false testimony concerning his offense record was material to the issue of change of name, let alone to the inferential accusation that the name change was sought to subvert the revocation of vehicle driving privileges. The trial court could only have relied, as does the majority opinion, on a conclusion that materiality of false testimony denying a criminal record follows as a matter of law in this case without further evidentiary basis. In my view, this is contrary to the fundamental obligation which the state must assume to prove beyond a reasonable doubt all elements of the offense and shifts to the defendant the burden of dispelling the suspicion and speculation embodied in the information allegation of employing a name change to obtain a vehicle operating license.

False testimony quite apparently assumes materiality in the context and purview of the judicial action to be performed. It being evident here that no direct proof forged the final and essential link in the state's case, the prosecution fails unless it may be concluded as a matter of law that Barkwell's concealment of his offense record could have influenced the trial court validly to have refused the change of name. False testimony as to an immaterial matter is not perjury, but if the false testimony be material to any proper matter of inquiry in the case it will be deemed perjured testimony if willfully uttered with knowledge of its falsity. *Harris v. Quincy, O. & K. C. R. Co.*, 172 Mo.App. 261, 157 S.W. 893 (1913).

As is more fully explored in *Matter of Natale*, 527 S.W.2d 402 (Mo.App.1975), the right to a change of name by the nonfraudulent use of another existed at common law and has been incorporated in the law of Missouri. Section 1.010, RSMo. Change of name under the common law was accomplished by usage or habit. Section 527.270, RSMo 1969 does not abrogate the common law right to name change, but provides speed and certainty in accomplishing the change by authorizing a court order which creates a public record. The right to change a name, however, remains as at common law and may be exercised at will, either by usage or by judicial decree subject to the conditions that a different name may not be adopted for fraudulent purpose or to the detriment of any other person. *Matter of Natale, supra.*

In acting upon an application for change of name, the scope of the trial court's discretion is narrow. *Matter of Natale, supra*; *Matter of Reed*, 584 S.W.2d 103 (Mo. App.1979). That discretion is circumscribed by the requirement that denial of a name change must be based on evidence before the trial judge sufficient to show an improper purpose. *Matter of Natale, supra.* General concern for possible detriment to society is insufficient to deny a petition. *Matter of Reed, supra.* Applicant for a change of name is required by the statute to do no more than state his residence, present name, name desired and the reason for such change. Under the limits upon exercise of discretion as noted, the court ascertains if the change would be proper.

It cannot be validly contended that disclosure of defendant's criminal offenses alone would have entitled the court to deny defendant the opportunity to adopt a different name. Some further evidence of improper purpose is required. Thus, in the *Matter of Knight*, 36 Colo.App. 187, 537 P.2d 1085 (1975) under the Colorado change of name statute which parallels the Missouri statute, it was held that Knight could not be denied a right to change his name solely because of his lengthy criminal record. The evidentiary link requires proof that the undisclosed incidents of unlawful conduct by the change of name applicant together with some other facts support a judicial determination that the name change is not proper. It is as to this additional element that the state's case here fails.

The majority concludes that Barkwell's false testimony belied his attempt to distinguish himself from his brothers who had served time in the penitentiary and denied the trial court information necessary to appraise the credibility of Barkwell as a witness and, hence, was material. Such assumptions, however, misconceive the nature of a change of name proceeding and the

latitude of judicial action on the issue before the court.

As indicated by the authorities cited, the judicial function performed by the court when presented an application for change of name is to ascertain if the change would be proper. In the exercise of discretion with which the court is vested, refusal to grant the name change is an abuse of that discretion unless the court has before it some evidence that third parties will be harmed by the change of name. *Matter of Natale*, 527 S.W.2d 402 (Mo.App.1975); Rule 95.01.

While the majority opinion stresses the contradiction in Barkwell's attempt to disassociate himself from his brothers as convicted felons when he himself had a significant record of offenses and convictions, the validity of any distinction Barkwell drew between his record of offenses and that of his brothers was not and could not have been a basis for the court to deny the name change even with full information as to Barkwell's criminal record. Such follows because those facts alone do not lead to any inference or conclusion of potential for harm to third parties. It is only when additional evidence is produced to cast doubt on the stated reasons for change of name as pretextual and given to conceal an improper motive that materiality of the false denial of a conviction record emerges. Such is the ingredient which is absent here and which was essential to prove the element of materiality.

Reliance on the general proposition of witness credibility is similarly unavailing to supply proof of materiality. Recognizing that denial of an application for change of name must be based on evidence that third parties may suffer harm, it also must follow that in the absence of such evidence the application must be granted. Thus, if the applicant supports his request by testimony, not otherwise controverted, which describes a proper name change not detrimental to the interests of any other person, the credibility of the applicant can scarcely be said to be in issue. Certainly discretion cannot extend to permit denial by the court of a name change merely on the ground that the applicant is a convicted felon and is therefore unworthy of belief when testifying in support of his application. Something more must appear to raise the issue of credibility. To hold otherwise would amount to sanction of arbitrary denial of a statutory and common law right to adopt a chosen name irrespective of propriety of purpose.

No evidence in this case supports a conclusion that Barkwell concealed his offense record for the purpose of frustrating inquiry into an improper objective motivating his change of name nor may it be suggested that the evidence justifies a finding that Barkwell's purpose for changing his name was other than as stated. More importantly, however, were the trial court to have been accurately informed as to Barkwell's criminal record, which was the sum total of the state's evidence in this prosecution, the court could not have validly found therefrom detriment to the interests of any other persons and would have been obliged to grant the application.

The state failed to offer evidence in this case sufficient to prove the elements of the offense of perjury and I would therefore reverse the judgment of conviction and order the defendant discharged.