**In the Matter of Judith Eleanor NATALE, a/k/a Judith Natale Montage, Petitioner, Appellant.**

No. 35880.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 29, 1975.

Judith Eleanor Natale a/k/a, Judith Natale Montage pro se.

Ellen Fulghum Watkins, Nat. Org. for Women, St. Louis Chapter, St. Louis, for appellant.

DOWD, Judge.

Petitioner appeals from the denial of her Petition for Change of Name requesting a court order changing her name from Judith Eleanor Natale, the name she had used

following her marriage to Daniel Natale, to Judith Natale Montage. The petition alleged: that petitioner was twenty-nine years old and a resident of St. Louis County; that petitioner desired to change her name for purposes of professional and personal identity and convenience to her husband and herself in carrying out their professional careers; that petitioner had never been convicted of any felony, misdemeanor, or offense involving moral turpitude; and, that petitioner's requested name change would not defraud any of her creditors, was proper and not detrimental to the interests of any other person. An affidavit was filed with the petition in which petitioner's husband stated that he concurred with petitioner's request for a change of name.

The evidence at the hearing on the petition consisted solely of petitioner's testimony confirming the allegations of the petition. Petitioner's husband was an Administrator in the Parkway School District who did not list his home phone number in order to avoid calls from parents and children during his free time. Petitioner was a law student at St. Louis University, expecting to graduate in May, 1974.[1] She desired to list her home phone number as an attorney. Prior to her marriage, the petitioner had not used the name Montage but had been known by three surnames due to her mother's remarriage and petitioner's adoption. While petitioner and her spouse had certain joint obligations such as charge accounts and leased their home and paid for utilities in the husband's name, no evidence was admitted which indicated that any of the couple's creditors would be defrauded by granting the name change petition.

On August 21, 1973, the court entered its order and judgment denying the Petition for Change of Name on the ground that "Petitioner is lawfully married and resides with her legal spouse" and "that under such circumstances the granting of said petition could be detrimental to others in the future." The court's order did not specify who the "others" were, but at the hearing, the court had commented, "Where a married couple who do have and in the future are likely to have many obligations for which they are liable, I can see circumstances that would be detrimental . . ." It appears, therefore, that the trial court found that the fact of a woman's ongoing marriage is prima facie evidence of detriment to creditors sufficient to deny her petition for change of name.

The thrust of petitioner's first argument is that she has the right at common law to change her name, regardless of her marital status. Section 1.010 (RSMo 1969, V.A. M.S.) adopts, as the common law of Missouri, the laws of England in existence prior to the fourth year of the reign of James the First which are of a general nature and which have not been invalidated, expressly or impliedly, by the United States Constitution, Missouri Constitution or Missouri Statute. A survey of the common law of England is, therefore, useful.

Surnames arose as descriptive terms applied to individuals to differentiate between parties with the same baptismal name, eventually becoming a required part of a person's legal name. Even so, names could be adopted and abandoned at will, and all members of a family, including the husband and wife, were not necessarily known by the same surname. Gradually, the custom that all members of the family bear the same, fixed surname developed as surnames lost their character as descriptions of particular individuals. Since the husband and wife customarily adopted the name of the spouse with the most property and since men typically held more property than women, most women took the husband's name. However, the custom never became law. The English common law view was that a woman's surname was not bound to

---

1. Petitioner has graduated from Law School and is now a member of the Missouri Bar.

her marital status and arose only through her use of a name.[2]

The law of England adopted by Section 1.010, *supra*, recognized the right to change name by the nonfraudulent use of another. The right was never limited to males; indeed, it was through this common law method that a woman changed her surname to that of her husband after marriage. *Cowley v. Cowley*, (1901) A.C. 450, 460; 19 Halsbury, Laws of England (3d ed.), p. 829; 32 Md.L.Rev. 409 (1972); Lamber, *A Married Woman's Surname: Is Custom Law?*, 1973 Wash.U.L.Q. 779. As Section 1.010, *supra*, does not purport to prohibit married females from exercising their common law rights, married women in Missouri are free to adopt another name by the common law method if this right has not been invalidated by constitutional or statutory mandate.

■ This court is unaware of any constitutional or statutory provision which abrogates the English common law right to change names through usage, Section 417.-200 (RSMo 1969, V.A.M.S.) notwithstanding. This statute provides that the transaction of business under a fictitious name not

previously registered with the secretary of state is a misdemeanor. The construction given the statute comports with the common law right to change names. Contracts entered under a fictitious name are valid in themselves, but the act of contracting without registration constitutes a misdemeanor. *State v. Euge*, 400 S.W.2d 119 (Mo.1966). No holding in Missouri directly confirms the common law right to change names through usage, but the courts have indicated that a person's name is the designation given to the individual by himself or herself and others and that an individual may change his or her name. *State ex rel. Kansas City Public Service Co. v. Cowan*, 356 Mo. 674, 203 S.W.2d 407, 408 (Mo. banc 1947); *State v. Deppe*, 286 S.W.2d 776, 781 (Mo.1956); *State ex rel. Rainey v. Crowe*, 382 S.W.2d 38, 42 (Mo.App.1964).

Policy argues in favor of acknowledging that a woman may exercise the common law right to change names. The custom of restricting a married woman's right to use a surname other than her husband's is an outgrowth of societal compulsion and economic coercion[3] inconsistent with develop-

2. This historical summary is drawn from 32 Md.L.Rev. 409 (1972) and Lamber, *A Married Woman's Surname: Is Custom Law?*, 1973 Wash.U.L.Q. 779. In the United States, recent cases declare that English common law allows a woman to retain her birth-given name after marriage unless she adopts her husband's name through usage. *State ex rel. Krupa v. Green*, 114 Ohio App. 497, 177 N.E.2d 616 (1961); *Stuart v. Board of Supervisors of Elections for Howard County*, 266 Md. 440, 295 A.2d 223 (1972); *Kruzel v. Podell*, 226 N.W.2d 458 (Wis. 1975); *Dunn v. Palermo*, 522 S.W.2d 679 (Tenn.1975); *Custer v. Bonadies*, 30 Conn. Supp. 385, 318 A.2d 639 (1974). But see *People ex rel. Rago v. Lipsky*, 327 Ill.App. 63, 63 N.E.2d 642 (1945).

3. It is not difficult to understand a married woman's assumption of her husband's name given the disabilities and privileges afforded a married woman under the common law. Blackstone set out the law relating to husband and wife, and enunciated the now famous rule that the husband and wife were one. 1. W. Blackstone, Commentaries 442. The husband was obligated to supply his wife with necessaries and to pay her debts

so long as she comported herself as a proper wife. The husband and wife were prohibited from giving evidence for or against each other in most legal proceedings, and the wife could not sue or be sued without joining the husband. The wife was presumed to act under her husband's coercion. 1 Blackstone, *supra*, at 442–444. The last doctrine was utilized to make the husband alone liable for the couple's joint torts, *Dailey v. Houston*, 58 Mo. 361 (1874); to make the husband jointly liable for his wife's torts, *Nichols v. Nichols*, 147 Mo. 387, 48 S.W. 947 (1898); and to presume that the husband alone was liable for torts and crimes committed by the wife in his presence, *Smith v. Schoene*, 67 Mo.App. 604 (1896); *State v. Murray*, 316 Mo. 31, 292 S.W. 434 (1926). A wife had no capacity to contract at common law. *Sharkey v. McDermott*, 16 Mo. App. 80 (1884).

Marriage also had a considerable impact on property rights. Blackstone said that all of the wife's chattels vested in the husband, 2 Blackstone, Commentaries 433, and this principal was adopted in Missouri. *Hunt v. Thompson*, 61 Mo. 148 (1875). The husband owned all of the wife's personal property,

ments granting women equal legal rights. The concept that the husband and wife are one,[4] the "one" being the husband, has been abandoned. Insistence that a married couple use one name, the husband's, is equally outmoded.

Petitioner chose to petition for a court ordered change of name under Section 527.270 (RSMo.1969, V.A.M.S.) rather than use the common law method to change her name. What has previously been said in reference to petitioner's common law right to change names, therefore, simply confirms petitioner's right to utilize the statutory procedure for changing names. Section 527.270, *supra*, and Rule 95.01, V.A. M.R. which is its counterpart do not abrogate and are merely supplemental to the common law method of name change. Under the common law, the change of name is accomplished by usage or habit, and under the statutory method, the change is accomplished by court order and public record. The primary difference between the two methods is, therefore, the speed and certainty of the change of name under the statutory procedure. 57 Am.Jur.2d, *Name*, § 11 (1971); 65 C.J.S. *Names* § 11(2) (1966). While no Missouri case has yet considered the relationship between the common law and statutory method of name change, the court's view that the common law and statutory methods of changing name coexist is consistent with the language of Section 1.010, *supra*, since Section 527.270 (RSMo 1969, V.A.M.S.) does not expressly abrogate the common law or invalidate the common law by inconsistency.

Petitioner's second argument urges that the trial court abused its discretion by denying the petition for change of name. The scope of discretion to deny a petition for change of name is narrow. Although no court in Missouri has previously considered the trial court's discretion to deny a name change petition, the advantages of the statutory procedure as against the common law method oblige this court to restrict the trial court's discretion. The statutory procedure accomplishes the change of name quickly and provides a means of notification to third parties under Rule 95.03 and Section 527.290 (RSMo 1969, V.A.M.S.). The petitioner also avoids any risk of prosecution for use of an unregistered, fictitious name under Section 417.200, *supra*, by using the statutory rather than common law method.

Our research had disclosed no appellate decision in any state which affirmed the trial court's denial of a married woman's name change petition on the ground of an ongoing marriage. *Petition of Hauptly*, 312 N.E.2d 857 (Ind.1974); *Marshall v. State*, 301 So.2d 477 (Fla.App.1974); *Application of Halligan*, 46 A.D.2d 170, 361 N.Y.S.2d 458 (1974); *Application of Lawrence*, 133 N.J.Super. 408, 337 A.2d 49 (Super.Ct.App. Div.1975). These cases hold that it is an abuse of discretion to deny a married woman her name change on grounds other than those specified in the statute or at common law or that it is an abuse of discretion to deny the petition on grounds which lack evidentiary support.

We are persuaded that the trial court abused its discretion in denying petitioner her requested name change. Both Rule 95.-01, and Section 527.270 (RSMo 1969, V.A. M.S.) provide:

> "Hereafter every person desiring to change his or her name may present a petition to that effect, verified by affidavit, to the circuit court in the county of

including choses in action which had been reduced to possession, *Hunt v. Thompson*, *supra*, and any wages earned or services performed by the wife, *Plummer v. Trost*, 81 Mo. 425 (1884). All rents and profits from a wife's lands belonged to her husband. 2 Blackstone, *supra*, at 434; *Dillenberger v. Wrisberg*, 10 Mo.App. 465 (1881). A husband could dispose of his wife's property as he wished, 2 Blackstone, *supra*, and the wife's property was liable for the debts of her husband. 2 Blackstone, *supra*; *Grimes v. Long*, 48 Mo. 340 (1871). The husband's right of curtesy was a larger interest than the dower right accorded the wife. 2 Blackstone, *supra*, at 433.

4. 1 W. Blackstone, Commentaries 442.

the petitioner's residence, which petition shall set forth the petitioner's full name, the new name desired, and concise statement of the reason for such desired change; and it shall be the duty of the judge or such court to order such change be made, and spread upon the records of the court, in proper form, if such judge is satisfied that the desired change would be proper and not detrimental to the interests of any other person."

In view of petitioner's common law right to change her name, the requested name change is proper. A husband no longer has the right to beat his wife with a switch no larger than his thumb. *Bradley v. State,* Walker Miss.Rep., 156 (1824); *State v. Rhodes,* 61 N.C. 453 (1868); 1 W. Blackstone, Commentaries 444–445. The law will not keep a wife under her husband's thumb by compelling her to keep his name once she has chosen another. The record before us is devoid of evidence of harm to third parties. Since petitioner's husband joined in her petition, no harm to her husband can be presumed, and possible harm to children born to the marriage in the future is too speculative. No harm to the state is shown by the record since petitioner did not request a name which is bizarre, obscene, offensive, or of a governmental body.

While the trial court's order did not indicate what parties petitioner's name change would harm, the court appears to have been concerned with detriment to creditors of petitioner and her spouse. The damage to the couple's creditors is no greater than that to the creditor of any person whose name has been changed, yet creditors have not complained of undue harm when women have assumed their husband's name upon marriage or changed their names following divorce pursuant to Section 452.100 (RSMo 1969, V.A.M.S.). Given the notice provided creditors by Rule 95.03 and Section 527.290, *supra,* it is at least as possible to defraud a creditor by nondisclosure of the existence of a spouse with the same name as the existence of a spouse with a different name. In addition, it does not seem difficult or uncommon to include the spouse's name, whether it be the same or different, whenever marital status is requested by creditors.

It should be noted in this regard that a wife's property is not automatically subject to the debts of her husband and that a wife is deemed a femme sole for most purposes. §§ 451.250, 451.290 (RSMo 1969, V.A.M.S.). It is difficult to imagine prima facie harm to creditors under these circumstances. Both spouses will be known when they seek credit together. The husband's creditors have no automatic right to proceed against the wife's property. The wife's creditors gain an unexpected advantage if they have extended credit to a woman believed to be single who is married and whose husband is found to be obligated for the particular debt involved. In times past, the management of a woman was "given" to the woman's husband by her father in the marriage ceremony. The woman was symbolically, if not literally, traded from father to husband like a chattel. Today, a woman is under new management, her own. If a married woman can obtain credit in her own name, creditors are not automatically damaged by permitting a woman to select the name under which she will seek credit.

A name change petition is not self executing. The trial judge retains the discretion under Rule 95.01, *supra,* to deny a petition if he has before him some evidence that third parties will be harmed by the name change. The fact that a woman is married, however, is not prima facie evidence of harm to third parties. This court need not decide precisely what evidence is required to deny the name change. The record contains no evidence of harm to petitioner's spouse, future children, or creditors; and, since the name Montage is not bizarre, obscene, offensive; or, of a governmental body the state is not harmed by the use of that name.

Constitutional claims presented in petitioner's third argument are not properly

before the court; thus, the court is not deprived of its jurisdiction under *State ex rel. Pickwick Stage Lines v. Barton,* 222 Mo.App. 1236, 4 S.W.2d 852, 855 (1928), or *Kircher v. Evers,* 210 S.W. 917 (Mo.App. 1919). Petitioner's brief argues hypothetically that her constitutional rights are infringed *if* the laws of Missouri prohibit a married woman from choosing a surname other than her husband's or compel a married couple to select and use one surname exclusively. Since this court has not so interpreted the law, petitioner's constitutional claims are not before the court.

The judgment is reversed and the trial court directed to issue its order changing petitioner's name as prayed.

WEIER, P. J. and RENDLEN, J., concur.