Henry BROWN, Petitioner-Appellant,

v.

Donald WYRICK, Warden Missouri State Penitentiary; Donald Jenkins, Director Missouri Division of Corrections; A. R. Lubker, Superintendent Missouri Highway Patrol; and State of Missouri, Intervenors-Respondents.

Armmon Lee LANG,
Petitioner-Appellant,

v.

Donald WYRICK, Warden Missouri State Penitentiary; Donald Jenkins, Director Missouri Division of Corrections; A. R. Lubker, Superintendent Missouri Highway Patrol; and State of Missouri, Intervenors-Respondents.

Nos. WD 31799, WD 31800.

Missouri Court of Appeals,
Western District.

Dec. 29, 1981.

Roger G. Brown, Bushmann, Neff & Gallaher, Jefferson City, for petitioners-appellants.

John Ashcroft, Atty. Gen., Michael Elbein, Asst. Atty. Gen., Jefferson City, for intervenors-respondents.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Chief Judge.

Henry Brown and Armmon Lee Lang, inmates of the Missouri State Penitentiary, separately filed petitions in the Circuit Court of Cole County for change of name under Rule 95. Henry Brown sought to have his name changed to Sha-Sha Malik Olugbala.[1] Armmon Lee Lang sought to have his name changed to Armmon Tilib Zihure.[2] A common reason for the desired change of name was assigned by each in their respective petitions, i.e., "to break the worldly bondage which ties me to that of a slave owner, to that of a name which would tie me closer to the bondage of my ancient ancestors."

Donald Wyrick, Warden of the Missouri State Penitentiary, Donald Jenkins, Director of the Missouri Division of Corrections, Colonel A. R. Lubker, Superintendent of the Missouri Highway Patrol, and the State of Missouri jointly filed motions to intervene in each case pursuant to Rule 52.12(a)(2), and leave to do so was granted by the trial court. Petitioners and intervenors stipulated that the cases be consolidated for "hearing", and the trial court so ordered. At the conclusion of an evidentiary hearing the respective petitions for change of name were denied by the trial court and each petitioner separately appealed. The separate appeals were consolidated by order of this court.

The petitioners, in a joint brief, raise four points of error on appeal: (1) the trial court erred in "granting intervenors the right to intervene pursuant to Rule 52.12"; (2) the trial court applied erroneous "standards" in determining that the individual requests for change of name were "improper" and "detrimental" to the interests of the intervenors; (3) the trial court erred in denying each petitioner's request for change of name because the evidence showed that any harm, inconvenience or detriment to intervenors would, "at most", be "minimal", and thereby failed to rise "to the level of evidence necessary under Missouri law to justify the court's denial of petitioners' name change request"; and (4) the trial court erred in permitting Donald Wyrick, Warden of the Missouri State Penitentiary, to testify that petitioner Brown was a "known dangerous man" because "no foundation" was laid to show how Wyrick "arrived at his conclusion" and said testimony "unfairly prejudiced the court's findings of fact and conclusions of law."

Disposition of petitioners' first point—that the trial court erred in granting leave to intervenors to intervene—focuses upon Rule 52.12(a)(2) which reads as follows: "(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."[3] At this juncture it is also perti-

---

1. According to Brown's testimony, Sha-Sha "means King of Kings", Malik "means king, or ruler", and Olugbala "means the savior of the people."

2. According to Lang's testimony, Tilib "means student, seeker", and Zihure "is a name given to a particular small people in African villages who are known as peaceful people."

3. Rule 52.12 was renumbered from Rule 52.11 and amended April 21, 1972, effective Dec. 1, 1972. Former Rule 52.11(a)(2) read as follows: "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in

nent to note that portion of prior Rule 95.01 (in effect at the time of the hearing which generated the consolidated appeals) [4] which read as follows: "it shall be the duty of the judge of such court to order such change [or name] to be made, and spread upon the records of the court, in proper form, *if such judge is satisfied that the desired change would be proper and not detrimental to the interests of any other person.*" (Emphasis added.) Although Rule 95, captioned "Change of Name", procedurally permits a person to obtain a change of name in an ex parte proceeding, the italicized portion of former Rule 95.01 (see present Rule 95.04) would be rendered meaningless if intervention was inexorably precluded even though a person by timely motion pursuant to Rule 52.12(a)(2) showed that a requested change of name would be detrimental to his interests. Consequently, in the context of these appeals, the italized portion of Rule 95.01 is a parameter to be considered in determining whether intervenors had a right to intervene pursuant to Rule 52.12(a)(2).

Rule 52.12(a)(2), in plain language and as judicially interpreted, requires persons seeking to intervene to show (a) an "interest" in the subject matter of the litigation, (b) that they are "so situated that disposition of the action may as a practical matter impair or impede" their "ability" to "protect" their interest, and (c) their "interest" is not adequately represented by the existing parties. *State, Etc., v. City of St. Joseph,* 579 S.W.2d 804, 806 (Mo.App.1979); and *Toombs v. Riley,* 591 S.W.2d 235 (Mo.App.1979). Petitioners rest their first point on the alleged failure of intervenors to satisfy requirement (a), i.e., that they had an "interest" in the change of name proceedings.

The court in *State, Etc. v. City of St. Joseph, supra,* at 806, discussing present Rule 52.12 vis-a-vis former Rule 52.11, observed that in this state the "general rule"

has always been that statutes or rules pertaining to intervention "should be liberally construed to permit broad intervention". The court also observed, however, that present Rule 52.12 amending former Rule 52.11 did not change or eliminate the requirement that a person seeking to intervene has an interest in the subject of the litigation. 579 S.W.2d at 806–07. In the course of doing so, the court went to some length to point out that the analysis in *State ex rel. Farmers Mutual Automobile Insurance Co. v. Weber,* 364 Mo. 1159, 273 S.W.2d 318 (Mo.banc 1954), as to what constituted an "interest" in the subject of the litigation was still valid. 579 S.W.2d at 807. *State ex rel. Farmers Mutual Automobile Insurance Co. v. Weber, supra,* analyzed "interest" in the subject of the litigation in the context of Section 507.090, RSMo 1949, the statutory precursor of former Rule 52.-11 and present Rule 52.12. The court in *Weber* concluded, in part, that "such 'interest' does not include a mere consequential, remote or conjectural possibility of being in some manner affected by the result of the original action." 273 S.W.2d at 321. Legal analysis of "interest" in the subject of the litigation in conjunction with present Rule 52.12(a) took on an additional dimension in the more recent case of *Toombs v. Riley, supra,* 591 S.W.2d at 236: "The amended Rule 52.12(a)(2) rescripts the federal Rule 25(a)(2) and adopts its rationale: to divert inquiry from doctrinaire principles of res judicata to practical considerations to determine the *interest* which qualifies for intervention. . . . The *interest* for intervention under amended Rule 52.12(a)(2), therefore, is a practical direction for the disposition of litigation to encompass as many presumptively affected persons as may be compatible with the avoidance of multiple suits and the demands of due process."

an action . . . (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action;".

**4.** Former Rule 95.01 was amended June 10, 1980, effective Jan. 1, 1981, and the quoted

portion thereof, in substance, is now contained in Rule 95.04 which reads as follows: "The court shall order the desired change of name if it finds that the change would be proper and not detrimental to the interests of any other person."

Treating the above principles as a legal matrix, attention now turns to the reasons assigned by intervenors to support their claim that they had an "interest" in the subject of the change of name proceedings. Warden Wyrick and Director Jenkins stated that as custodians of petitioners they were required to initiate and maintain numerous records regarding each, e.g., "face sheets", money account cards, work assignments, visitor lists, cell assignments, identification cards, identification data for the National Crime Information Computer, clothing identification, hospital and dental records, mail records, and records relating to disciplinary hearings; that if the requests for change of name were granted such records would have to be amended, and doing so would be time consuming and expensive, inconvenience the operation of the Missouri State Penitentiary, and create undue "confusion" in the "operation of the institution since the inmate's sentence and judgment, prior disciplinary reports, and prior incarceration, if any, would list his former name". Superintendent Lubker stated that arrest warrants and wanted notices pending against individuals are checked by name and to allow incarcerated persons such as petitioners to change their names would hamper the ability of the Missouri Highway Patrol to check their true identity; that if the requests for change of name were granted future identification would be hampered absent incurring expense in changing current records pertaining to petitioners. The state alleged that its duty to "discover and prove" persons who are "persistent" or "dangerous" offenders would be "severely hampered" if inmates of the Missouri Penitentiary were permitted to change their names, and that it had a duty to see "that convicted felons are not allowed an easy mechanism to evade the valid collateral consequences of their conviction."

Petitioners imply that under Rule 95.01 (present Rule 95.04) the trial court was exclusively burdened to sua sponte ferret out potential detriment to third persons in change of name proceedings. Neither former Rule 95.01 nor present Rule 95.04 are susceptible of such a tortured construction. Although a trial court may inquire into the matter, doing so is not exclusively within its province and intervention is a proper procedural vehicle to avoid putting the trial court in a complete adversary position. The trial court properly noted that the joint motions to intervene facially demonstrated that intervenors possessed the requisite interest to justify intervention. Evidence introduced by intervenors at the hearing, infra, vindicated the ruling of the trial court. Although never mentioned by any of the parties, the statutorily prescribed duties of the Warden of the Missouri State Penitentiary, Section 216.390, RSMo 1978, the Director of the Division of Corrections, Sections 216.020(6) and 216.220, RSMo 1978, and the Superintendent of the Missouri State Highway Patrol, Section 43.030 and 43.120(4), RSMo 1978, also serve to support their claims of an "interest" in the subject of the litigation. Accordingly, petitioners' first point is not well taken.

Petitioners' second and third points have such a patent affinity that they lend themselves to being discussed and disposed of jointly. Essentially, petitioners contend that the evidence introduced by intervenors, as gauged by prevailing standards, merely showed that the requested change of names would have a minimal effect upon intervenors, and fell woefully short of showing a detrimental effect upon intervenors.

Petitioners rely upon *Matter of Natale*, 527 S.W.2d 402 (Mo.App.1975), and *In Re Reed*, 584 S.W.2d 103 (Mo.App.1979), in support of their position. In *Matter of Natale, supra,* the trial court denied a married woman's request to change her surname to one other than that of her husband. The wife's petition was accompanied by an affidavit from her husband concurring in her request for change of name. The testimony of the wife was the only evidence offered at the hearing conducted by the trial court. Nevertheless, the trial court, absent any supporting evidence, summarily concluded that petitioner's ongoing marriage constituted prima facia evidence of a detriment to creditors and denied her petition for change of name. The judgment of the trial

court was reversed on appeal, and the appellate court's reasons for doing so were summarized as follows: "The trial judge retains the discretion under Rule 95.01, *supra,* to deny a petition if he has before him some evidence that third parties will be harmed by the name change. The fact that a woman is married, however, is not prima facie evidence of harm to third parties. This court need not decide precisely what evidence is required to deny the name change. The record contains no evidence of harm to petitioner's spouse, future children, or creditors; and, since the name Montage is not bizarre, obscene, offensive; or, of a governmental body the state is not harmed by the use of that name." Petitioners' attempt to equate the present record on appeal with that in *Matter of Natale, supra,* strains credulity. As a matter of fact, *Matter of Natale, supra,* augers against rather than in favor of petitioners as the court carefully avoided drawing any fixed perimeters as to the nature and quantum of evidence required to deny a petition for change of name. On the other hand, the court clearly recognized, supra, that a "trial judge retains the discretion under . . . [Rule 95] to deny a petition if he has before him some evidence that third parties will be harmed by the name change." 527 S.W.2d at 406. Likewise, *In Re Reed, supra,* is unsupportive of petitioners' position. There, the petitioner sought to add the so-briquet "Sunshine" to his legal name. The trial court denied petitioner's request to do so. The judgment of the trial court was reversed on appeal. In doing so the court pointedly held, 584 S.W.2d at 104, that "Mr. Reed's requested name is not particularly bizarre, obscene or offensive, and no prima facia evidence of harm to a third party was presented at the hearing." *In Re Application of Knight,* 537 P.2d 1085 (Colo.App. 1975), provides some further insight into the issue at hand. There, as here, petitioner, an inmate of the Colorado State Prison, sought to change his name to one rooted in his African heritage. The trial court, in denying the request for change of name, concluded, without any evidentiary support, that to grant the request would be prejudi-

cial to prison and police authorities. Colorado's change of name statute contained a provision substantively identical to former Rule 95.01 and present Rule 95.04. The Colorado Court reversed the judgment of the trial court and remanded the cause with directions to either grant the petition forthwith or hold a hearing for the presentation of evidence militating against the petitioner. The Colorado Court of Appeals carefully pointed out that although a trial court is not required to grant every petition for change of name, its denial of such a petition must be accompanied by substantial evidence of record showing the existence of good and sufficient cause for doing so. 537 P.2d at 1086. Thus it is quite evident that the Colorado Court of Appeals recognized that in a change of name proceeding initiated by an inmate of a penal institution, potential detriment to the prison system and law enforcement in general were within the ambit of proper judicial inquiry, and, if either was established, denial of a request for change of name was insulated from a charge of abuse of judicial discretion.

■ A plethora of evidence was introduced by intervenors to substantiate their position that granting the requested change of names would be detrimental to the administration of the penal system and law enforcement in general. Some of this evidence met the criterion of substantiality and, as is true in many cases, some fell short of doing so. Findings of fact and conclusions of law entered by the trial court to support denial of the requests for change of names reflect that it sifted the substantial evidence from the unsubstantial evidence and relied upon the former rather than the latter. A capsule description of evidence which the trial court had before it to rely upon follows. When an inmate is initially processed into the Missouri State Penitentiary a "face sheet" is prepared containing his name, as shown by the judgment of conviction, a description of the individual, the crime for which he was convicted, his fingerprints, and an assigned prison "register number". Copies of the "face sheet" are disseminated to various units of the

penitentiary, the Division of Corrections, The Board of Probation and Parole, and the Missouri Highway Patrol. An inmate's name, as shown on his "face sheet", is used to identify him with respect to other prison records maintained on his behalf, namely, money account cards, work assignments, visitor lists, cell assignments, identification cards, hospital and dental records, mail records, and internal disciplinary proceedings. Additionally, a cross-index file is maintained on each inmate, keyed to his name as shown on his face sheet, listing any prior alias the inmate has used. Each of the records heretofore maintained would have to be amended at the expense and inconvenience of the penal institution if the respective requests for change of name were granted. Moreover, should an inmate be granted a legal change of name, his new name would have to be fed into the National Crime Information Computer. Requests from various law enforcement agencies concerning inmates are submitted by name rather than registration number, thus creating situations ripe for confusion should an inmate be permitted to legally change his name. The same is true with respect to detainers lodged against inmates and writs of habeas corpus ad testificandum. Among prison supervisory and security personnel, inmates are known by name rather than register number. Permitting petitioners to change their names would be conducive to violence within the prison as it could lead to either inadvertently placing enemies together or thwarting efforts to keep them separated. Evidence was also presented that records maintained by the Missouri Highway Patrol would have to be changed and investigation procedures would be hampered if petitioners were permitted to change their names.

The maintenance of accurate records, both from the standpoint of internal security and operational efficiency, plays a vital role in administering correctional institutions. Dire consequences flow when either is jeopardized. The desire of petitioners to change their names, however well motivated, must yield to the harm which the evidence bears out would be inflicted on the Missouri State Penitentiary if they were permitted to change their names while still members of the prison population. The destructive aftermath of doing so outweighs any advantages that might inure to petitioners. On the basis of the record on appeal, the trial court cannot be said to have abused its discretion in refusing to grant the requested change of names on the ground that doing so would be detrimental to intervenors. The resultant confusion and record keeping problems which would follow if petitioners' requests had been granted cannot be lightly passed off as consequential, remote or conjectural in nature in terms of "detriment" as contextually used in former Rule 95.01 and present Rule 95.04. Under the tenet of appellate review laid down in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.Banc 1976), petitioners' second and third points afford no basis for relief.

█ Petitioners' fourth and final point faults the trial court for permitting Warden Wyrick to testify that petitioner Brown was a "known dangerous man". Ironically, counsel for petitioners elicited this testimony from·Warden Wyrick on cross-examination without objection or motion to strike on grounds that it was unresponsive or otherwise inadmissible. Under these circumstances, petitioners' fourth and final point presents nothing for appellate review. *Le Grand v. U-Drive-It Co.*, 247 S.W.2d 706, 714 (Mo.1952); and *State v. Warner*, 361 S.W.2d 159, 163 (Mo.App.1962).

Judgments affirmed.

All concur.