In re Change of Name of Sonya Lyn
WHEAT, Jessica Dawn Wheat, and Joh-
nathan Trent Wheat, Petitioners–Ap-
pellants (Two Cases).

Nos. 16843, 16844.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 27, 1990.

Kenneth A. Wagoner, Brill, Moore &
Wagoner, P.C., West Plains, for petition-
ers-appellants.

CROW, Judge.

These two appeals are consolidated for
the purpose of opinion. As they arise from
one continuous saga, we shall set forth the
pertinent facts at the outset. However,
the legal issues in each appeal are unique
to it; consequently, we shall address the
legal issues separately.

On December 14, 1989, Sonya Lyn Wheat
filed an application in the Circuit Court of
Howell County to be appointed next friend
for her two minor children, Jessica Dawn
Wheat and Johnathan Trent Wheat. The
application averred both children resided
with Sonya and that both children were
under the age of fourteen years. The ap-
plication stated the appointment was for
the purpose of instituting an action to
change the children's names. The court
clerk made the appointment. Rule 52.-
02(b).[1]

The petition for change of name listed
three petitioners: Sonya, Jessica and Joh-
nathan. The petition pled that all three
desired to change their surname to Hens-
ley. The petition explained: (1) Sonya was
once married to Jason Dal Wheat, father of
Jessica, but the marriage had been dis-
solved, (2) Jason pays no child support for
Jessica and keeps no contact with her, (3)
Johnathan's father is Randy Gene Batesel,
who pays no child support for Johnathan
and does not oppose the change of Johna-
than's surname, and (4) Sonya's maiden
name was Hensley.

The action was assigned number CV389–
615CC.

In obedience to Rule 95.03, the court
clerk sent notice by certified mail to Jason

---

1. Rule references are to Missouri Rules of Civil
Procedure (20th ed. 1989) except where other-
wise indicated.

Dal Wheat and Randy Gene Batesel that the court would hear the matter January 16, 1990, at 1:00 p.m. Each notice was accompanied by a copy of the petition. The correspondence to Jason Dal Wheat was addressed "c/o J.D. Wheat, 'K' Highway, West Plains, MO 65775." It came back January 4, 1990, marked "RETURNED TO SENDER, MOVED, LEFT NO ADDRESS 65775."

The case was heard as scheduled January 16, 1990, by Circuit Judge Harold L. Henry. Sonya appeared in person with her lawyer. Neither Jason Dal Wheat nor Randy Gene Batesel was present. Judge Henry appointed Steven Privette, a lawyer in the courtroom, as guardian ad litem for Jessica and Johnathan.

Sonya then testified, confirming the allegations recited in the second and third paragraphs of this opinion. She added: (1) Jessica was born September 28, 1986, (2) the marriage with Jason Dal Wheat was dissolved January 28, 1987, (3) Johnathan was born September 25, 1988, and was given the surname Wheat because that was still Sonya's surname, (4) Sonya was never married to Randy Gene Batesel, (5) Sonya is presently unmarried, and (6) Sonya and both children reside with Sonya's parents on the latters' farm.

Sonya recounted that Jason Dal Wheat had not seen Jessica during the three years since the dissolution, that he had never sent a birthday or Christmas card, that there were "one or more felony warrants outstanding for his arrest," and that Sonya's only contact with him since the dissolution was a telephone call "probably a year ago." At that time, said Sonya, Jason stated he had rented an apartment in Springfield. Sonya "hung up on him" because "he tries to bother me." Asked whether she had any indication Jason had lived elsewhere since the phone call, Sonya responded, "I've heard that he came back to West Plains."

Judge Henry, who had earlier inquired whether Jason had been personally served with summons in the dissolution case or whether service had been by publication,

interjected: "See there, Mr. Wagoner.[2] He was in Springfield when he tried to call her and told her he'd rented an apartment, but I don't think she really has any knowledge that he lives here in West Plains. Yet this Notice actually went out to his folks' place, apparently."

Following Judge Henry's comment, Sonya's lawyer presented testimony by a Howell County deputy sheriff, who disclosed that in June, 1989, Jason Dal Wheat was residing in West Plains. The deputy recounted that "about two ... months ago" Jason "moved out on K Highway with his parents." The deputy did not know Jason's present whereabouts. The deputy confirmed a warrant was out for Jason's arrest for stealing. Efforts to serve it on several occasions had been unsuccessful. The deputy's testimony continued:

"Q. If a summons in a civil action was delivered to you for service upon Mr. Wheat, would you be able to serve it in Howell County on him?

A. No sir.

Q. Do you know what county to forward it to for service upon him?

A. No sir."

At the conclusion of the hearing, Judge Henry made the following entry on the docket sheet: "Case is taken advisement."

On January 25, 1990, Judge Henry entered the following order: "The court finds that the proposed name changes may not be in the best interest of the parties interested in this action. The petition is, therefore, denied. Petition is dismissed."

On February 1, 1990, Sonya filed a new application in the Circuit Court of Howell County to be appointed next friend for Jessica and Johnathan. The application was identical to the earlier one. Again, the court clerk made the requested appointment. Accompanying the application was a new petition for change of name, also identical to the earlier one.

The new case was assigned number CV390–46CC. To differentiate it from the earlier one we henceforth refer to the new

2. Sonya's lawyer.

case as "case II" and the earlier one as "case I."

The court clerk sent notice by certified mail to Jason Dal Wheat that the court would hear case II March 19, 1990, at 1:00 p.m. The notice, accompanied by a copy of the petition in case II, was addressed to Jason "c/o Howell County Jail, West Plains, MO 65775."

On February 5, 1990, a document styled "Consent to Name Change" was filed in case II. It stated: "I hereby consent to the name change of Johnathan Trent Wheat to Johnathan Trent Hensley." It was dated February 1, 1990, and bore the signature "Randy G Batesel."

On February 7, 1990, Sonya's lawyer filed a document in case II requesting that the case be assigned to Judge David Dunlap, an Associate Circuit Judge of the Circuit Court of Howell County. At the foot of the document was a proposed order to effectuate the assignment. The order was prepared for the signature of Judge Henry, the presiding judge of Judicial Circuit 37, a four-county circuit which includes Howell County. § 478.167, RSMo 1986.

The notice to Jason Dal Wheat was evidently received by him February 9, 1990, as the court file in case II contains a certified mail receipt showing delivery that date.

The next activity in case II occurred February 14, 1990, when Judge Henry entered the following order: "The petition is dismissed with prejudice by reason of the judgment entered on 1–25–90 by this court in case styled 'In re name change of: Sonja [sic] Lyn Wheat, Jessica Dawn Wheat and Johnathan Trent Wheat,' case No. CV389–615CC. Further, Sonya Lyn Wheat is enjoined from filing further petitions involving the same parties and issues."

On February 20, 1990, Sonya, Jessica and Johnathan filed in the office of the Clerk of the Circuit Court of Howell County a notice of appeal in case I and a notice of appeal in case II. Both notices were received by the Clerk of this Court February 26, 1990. The

appeal in case I was assigned number 16844; the appeal in case II was assigned number 16843.

### Appeal 16844

■ Appellants' brief[3] presents one point relied on; it avers the trial court erred in denying the relief sought in that appellants followed the procedure for change of name required by § 527.270, RSMo 1986, and Rule 95, and "the proposed name was not bizarre, obscene, offensive, or that of a governmental body."

In *Matter of Natale*, 527 S.W.2d 402 (Mo.App.1975), the Eastern District of this Court summarized the history of the common law right of a person to change his— or her—name, and held that the method for changing one's name established by § 527.270 and Rule 95 did not abrogate the common law but merely supplemented it. 527 S.W.2d at 405[3]. The opinion explained:

"The scope of discretion to deny a petition for change of name is narrow. Although no court in Missouri has previously considered the trial court's discretion to deny a name change petition, the advantages of the statutory procedure as against the common law method oblige this court to restrict the trial court's discretion. The statutory procedure accomplishes the change of name quickly and provides a means of notification to third parties...." *Id.* at 405.

In *Natale* the petitioner was a married woman who wanted to change her surname from that of her husband (which she had used since marrying him) to Montage. Their home phone number was unlisted because the husband, a school official, wanted to avoid calls there from parents and children. The petitioner, a new lawyer, wanted to use the name Montage for career purposes, one of which was to list the home phone in that name, identifying her as a lawyer. The husband filed an affidavit stating he concurred in his wife's re-

---

3. The lawyer who appeared with Sonya in the trial court filed a brief in each appeal on behalf of Sonya, Jessica and Johnathan. The guardian ad litem of Jessica and Johnathan filed no brief.

He requested that the appeals be submitted on the briefs referred to at the start of this footnote.

quest. The trial court denied the request, evidently believing the change could be detrimental to present and future creditors and to future children of the marriage.

Reversing the judgment, the Eastern District held that the record was bare of evidence of harm to third parties, that possible harm to future children of the marriage was too speculative to deny the request, and that no harm to the State was shown inasmuch as the requested name was not bizarre, obscene, offensive, or that of a governmental body. 527 S.W.2d at 406. The case was remanded to the trial court with a directive to grant the change. *Id.* at 407.

*In re Reed*, 584 S.W.2d 103 (Mo.App. 1979), was an action by Morris Edward Reed to change his name to Sunshine Morris Edward Reed. His evidence showed he was known by friends and acquaintances as Sunshine, he used Sunshine in conducting his daily affairs, he preferred Sunshine over his given name, and he had borne the sobriquet Sunshine at least ten years. *Id.* at 104. The trial court denied the request. Citing *Natale*, the Eastern District of this Court reversed, holding that the trial court had abused its discretion. *Id.* The case was remanded with a directive that the trial court enter an order changing the petitioner's name as prayed. *Id.*

In the instant case Sonya testified that neither she nor the children had ever gone through a change of name proceeding, that there was no unsatisfied judgment against any of them, that there was no lawsuit pending against any of them seeking money damages, that Sonya wanted to carry her parents' surname and wanted the children's surname to be the same as hers, and that the name changes would not be detrimental to any other person.

The children's guardian ad litem, after questioning Sonya, registered no objection to the proposed name changes.

The record yields few clues to the reasoning that guided Judge Henry to deny the petition. His only finding was that "the proposed name changes may not be in the best interest of the parties interested in this action."

There were, as we have seen, three named parties: Sonya, Jessica and Johnathan. Whether Judge Henry was referring to them alone, or whether he was also considering Jason Dal Wheat and Randy Gene Batesel, is consigned to speculation.

If Judge Henry feared restoring Sonya's maiden name was not in her—or the children's—best interest, guidance was available in *Miller v. Miller*, 670 S.W.2d 591 (Mo.App.1984). There the wife, in an action for dissolution of marriage, prayed for restoration of her maiden name despite being the mother of two minor children. The trial court denied the request, being unconvinced that the change would not be detrimental to the children. The Eastern District of this Court reversed, saying:

> "We have previously addressed the exact issue presented here in ... *Natale* ... where a married woman with her husband's consent petitioned to have her name changed back to her maiden name. Even though the evidence indicated that the change would not have a detrimental effect on anyone, the trial court denied the request on the basis that petitioner was married, lived with her husband, and that there *could be* a detriment to any children born in the future or to her creditors. (Emphasis ours.)

> In reversing the judgment, this court held that the discretion in denying such petitions is narrow and that the possibility of a detrimental effect was insufficient reason to deny the petition.... We further held that appellant has both a common law right and a statutory right pursuant to § 527.270 to change her name. Both methods are coexistant [sic] and § 527.270 neither expressly abrogates the common law nor invalidates it by any inconsistencies.

> ....

> We are unaware of any law which presumes that a different name of a parent from their child is detrimental. Absent concrete evidence to the contrary, a general concern of possible detriment is insufficient to deny a petition for a change of name in light of the obvious legislative

intent that such a procedure be available." 670 S.W.2d at 592–93.

In *Miller* the Eastern District remanded with a directive that the trial court issue an order changing the wife's name as requested. *Id.* at 593.

In the instant case, if Sonya were the only person seeking a change of name, *Miller* establishes there would be no justification for denying it. Like the mother in *Miller*, Sonya sought restoration of her maiden name.

However, Sonya, as next friend for Jessica and Johnathan, also prayed that their surnames be changed to Sonya's maiden name. Did that justify the denial of any, or all, of the changes?

If, as held in *Miller*, there is no presumption that a different surname of a parent from her child is detrimental, we perceive no reason to assume it is detrimental for a mother and her children to carry the same surname, even if it be the mother's maiden name. That is particularly true here. According to the evidence, Jason Dal Wheat maintains no contact with Jessica, Johnathan is not Jason's child, and Johnathan's alleged father was never married to Sonya and has no objection to the name change.

We recognize, of course, that if Jessica and Johnathan carry Sonya's maiden name, people are likely to infer Jessica and Johnathan were born outside wedlock. We assume, however, that Sonya—the sole parent rearing and supporting the children—has considered that prospect.

Regarding Jessica (three years and three months old at the time of the hearing), Sonya's testimony included this:

"Q. Would she be able to express an opinion as to whether she wanted her name changed or would she even understand?

A. She thinks her name is Hensley. She's never seen Jason.

Q. She's never seen her father?

A. Huh-uh. She don't even know who he is."

Our examination of the record reveals no concrete evidence that the name changes prayed for would be detrimental to the interest of any person—even the respective interests of Jason Dal Wheat and Randy Gene Batesel. We therefore hold that Judge Henry abused his narrowly circumscribed discretion in denying the three name changes. The order in case I must consequently be reversed and the case must be remanded with a directive to grant the three name changes as prayed.

### Appeal 16843

As reported earlier, six days after filing case II the petitioners filed a written request that Judge Henry assign case II to Judge Dunlap. As Judge Henry had adjudicated case I and is the only circuit judge in Judicial Circuit 37, petitioners' lawyer evidently anticipated Judge Henry would, absent a change of judge, adjudicate case II.

■ Rule 51.05, Missouri Rules of Civil Procedure (1990), governs applications for change of judge in civil actions. A proper application for change of judge must be sustained. *Matter of Buford,* 577 S.W.2d 809, 827 (Mo. banc 1979). Although Rule 51.05(a) provides that the application be in writing, no specific form is required. *Farnsworth v. Wee,* 720 S.W.2d 409, 411[3] (Mo.App.1986).

Petitioners' timely written request of February 7, 1990, for a change of judge from Judge Henry in case II was sufficient to satisfy Rule 51.05. While Judge Henry was not obliged to act on it until it was formally presented to him, *Buford,* 577 S.W.2d at 827, he was without authority to do anything except grant it. *West v. Moran,* 586 S.W.2d 68, 69–70[1] (Mo.App.1979).

■ We need not decide whether Judge Henry was required to assign case II to Judge Dunlap, as petitioners requested. See Rule 51.05(e)(1). All we need do to resolve the appeal in case II is point out that once petitioners filed their timely application for change of judge, Judge Henry was without jurisdiction to adjudicate case II. *State ex rel. King v. Huesemann,* 776 S.W.2d 488, 491[3] (Mo.App.1989); *State ex rel. Ford Motor Co. v. Hess,* 738 S.W.2d 147, 148 (Mo.App.1987). Judge Henry's or-

der of February 14, 1990, was therefore a nullity.

\* \* \*

The order of January 25, 1990, in case I (CV389–615CC) is reversed and the case is remanded to the trial court, which is directed to issue its order changing the names of petitioners-appellants as prayed.

The order of February 14, 1990, in case II (CV390–46CC) is reversed.

MAUS, P.J., and PREWITT, J., concur.