In the Interest of B— L— W—, a Minor, By ELLEN K—, Next Friend, Petitioner–Respondent,

v.

William J. WOLLWEBER, Respondent–Appellant.

No. 17422.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 21, 1992.

Michael S. Box, Blue Springs, for respondent-appellant.

Cheryl B. Fielding, Springfield, for petitioner-respondent.

SHRUM, Presiding Judge.

William James Wollweber appeals from a judgment which changes the surname of his illegitimate minor daughter, B__ L__ W__, from Wollweber to K__. The child's mother, Ellen K__, as next friend, brought the action pursuant to §§ 527.270–290, RSMo 1986.[1] At all times pertinent B__ L__ W__ was the subject of a pending juvenile proceeding. Section 211.031, et seq., RSMo 1986.

Two questions are presented:

(1) Did the trial court have jurisdiction to order a name change for the minor when she was subject to juvenile court jurisdiction?

(2) Was there substantial evidence to support the judgment which changed the child's name?

We answer both questions "Yes" and affirm the judgment of the trial court.

## FACTS

B__ L__ W__ was born March 26, 1984. Her mother, Ellen K__, and her father, Wollweber, were never married to each other. The parents last lived together approximately two years prior to the trial of this case. After they ceased living together but before the name change action was filed, Wollweber was charged with first degree murder. He did not appear at the trial court hearing because he was in jail in Jasper County awaiting trial on that charge.

At the name change hearing, Ellen K__ testified that, at times, Wollweber had denied to her that he was the child's father. She further testified that, on occasion, they had been forced to live in their car because Wollweber would not work. She admitted that B__ L__ W__ came under juvenile court jurisdiction shortly after the child's birth. She further testified that B__ L__ W__ had been in and out of foster homes, but upon the recommendation of Kimberly Pratt, the assigned social worker, the physical custody of B__ L__ W__ had been

1. Section 527.270, RSMo 1986, reads, in part: "[E]very person desiring to change his or her name may present a petition to that effect ... to the circuit court in the county of the petitioner's residence, which petition shall set forth the petitioner's full name, the new name desired, and a concise statement of the reason for such desired change; and it shall be the duty of the judge of such court to order such change to be made ... if such judge is satisfied that the desired change would be proper and not detrimental to the interests of any other person." Section 527.290, RSMo 1986, contains provisions for giving public notice of the name change.

returned to Ellen K___ before the name change petition was filed.

Additional evidence came from social worker Pratt. She testified that Wollweber was under a court ordered treatment plan regarding his daughter, but he was not in compliance with the plan and had not been in compliance before his incarceration. She also testified that Wollweber did send his daughter a card each week (sent through Pratt), but he was not allowed to visit her before he was jailed because of the child's allegations that he had sexually abused her. Pratt confirmed Ellen K___'s testimony that the child wanted her surname changed. She testified that B___ L___ W___ had told her she liked her mother's name, that she wanted to have that name, and that B___ L___ W___ knew how to spell her mother's surname. Pratt further testified that she had encouraged Ellen K___ to proceed with the name change after Ellen K___ first brought up the idea. Finally, Pratt testified that the notoriety from Wollweber's trial "is going to be atrocious and [B___ L___ W___] is not an untroubled child to start with and—I think even as far away as her foster home placement where she was before was—and the name was difficult for her, people associate it."

Ellen K___'s testimony in support of her petition to her daughter's surname was (a) that she didn't want her daughter to have to answer unnecessary questions about her last name; (b) that B___ L___ W___ would never in the future live with Wollweber; and (c) that B___ L___ W___ had asked that her name be changed after she came out of foster care because she and her mother were "going to be a family."

Evidence offered on behalf of Wollweber included a public opinion survey made in Jasper County for the public defender's office concerning Wollweber's criminal case. Among the survey questions were: "[D]o you remember reading or hearing about a man in Joplin being charged in September with the death of a four-year-old child"? "[D]o you recall the name of the man who has been charged"? From the results of the poll, the pollster concluded in part that "the data suggests that

although media publicity has in fact produced a significant awareness of the case itself, it appears that it is of little consequence in relation to name recognition."

Based on the foregoing the name change was ordered. This appeal followed.

## DISCUSSION AND DECISION

### Point I: Jurisdiction

■■■ In Point I, Wollweber argues that § 211.031, RSMo 1986, grants exclusive jurisdiction to the Juvenile Division of the Circuit Court regarding a minor child who is the subject of a pending juvenile action and thus the trial court lacked jurisdiction to proceed with a name change request. Such argument misconceives § 211.031, the pertinent portions of which follow:

1. Except as otherwise provided herein, the juvenile court shall have exclusive original jurisdiction in proceedings:

(1) Involving any child ... in need of care and treatment because: ... [of lack of proper care custody or support];

(2) Involving any child ... in need of care and treatment because: ... [of the child's incorrigibleness];

(3) Involving any child who is alleged to have violated a ... law ...;

(4) For the adoption of a person;

(5) For the commitment of a child to the guardianship of the department of social services as provided by law.

Clearly, the exclusive original jurisdiction given the juvenile court by § 211.031 is confined to specifically enumerated situations. "A juvenile court is a legal tribunal limited in its jurisdiction by the statute law which establishes it." *State v. Taylor*, 323 S.W.2d 534, 537 (Mo.App.1959); *State ex rel. L.L.B. v. Eiffert*, 775 S.W.2d 216, 219 (Mo.App.1989) (§ 211.031 does not give the juvenile division plenary authority to determine custody of children in all circumstances or in all proceedings). While the juvenile code is to be liberally construed to promote the interests of infants, § 211.011, RSMo 1986, such liberal construction cannot be utilized to give the juvenile court jurisdiction and powers not conferred upon it by statute. *In Interest of M.K.R.*, 515

S.W.2d 467, 470 (Mo. banc 1974) (no authority under juvenile code to order sterilization of an infant).

Wollweber concedes the correctness of the foregoing principles but answers that once the juvenile petition is filed, the juvenile court retains exclusive jurisdiction as to all matters concerning the child. He relies upon *State v. Britton*, 647 S.W.2d 155 (Mo.App.1982), and *State v. Buckner*, 198 Mo.App. 230, 200 S.W. 94 (1918). However, he misinterprets the holding in *Britton* and *Buckner*. Those cases stand for the proposition that where the juvenile court has authority to assume jurisdiction of a child and does initially assume jurisdiction, its jurisdiction supersedes that of any and all courts *touching the same subject matter*. *See State ex rel. McCarty v. Kimberlin*, 508 S.W.2d 196, 199 (Mo.App. 1974). In *Britton* the subject matter was violation of state laws by the juvenile and in *Buckner* the subject matter was the physical custody of a neglected child. Thus, in both cases, the statute empowered the juvenile court to assume jurisdiction and once it did so before other courts acted, its jurisdiction was exclusive on that *same subject matter*. Wollweber is correct when he argues that "[t]he underlying policy that only one Court entertain jurisdiction on one subject matter protects the child from conflicting results in different courts." However, that argument has no application in this case. The juvenile court did have exclusive jurisdiction over the subject matter of the custody of B__ L__ W__. But it had no authority over the subject matter of her name change. Except in adoption cases, a change of name is not a subject matter dealt with in the juvenile code. We reject Wollweber's argument in Point I. The trial court had jurisdiction pursuant to §§ 527.270–290, RSMo 1986, to order the name change for B__ L__ W__ even though she was subject to juvenile court jurisdiction at the time.

*Point II: Sufficiency of Evidence*

In Point II Wollweber challenges the sufficiency of the evidence to support the trial court's ruling that the change of name would be in the child's best interest and not detrimental to others. Our review is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). In a name-change case, as in other court-tried cases, we must affirm the judgment unless it is not supported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Miller v. Miller*, 670 S.W.2d 591, 593 (Mo.App.1984).

A trial court has discretion under Rules 95.03 and 95.04 [2] to deny a petition if there is evidence that the change would be detrimental to the interests of other persons. *Matter of Natale*, 527 S.W.2d 402, 406 (Mo. App.1975). However, "The scope of discretion to deny a petition for change of name is narrow." *In Re Wheat*, 794 S.W.2d 710, 712 (Mo.App.1990); *Natale*, 527 S.W.2d at 405. And when the issue involves the surname to be given an illegitimate child "[n]either parent has an absolute right for the child to bear his or her name." *Kirksey v. Abbott*, 591 S.W.2d 751, 752 (Mo. App.1979). In such case, a trial court "has wide discretion and should be guided by what is in the best interests of the child." *Id*. The law does not presume "that a different name of a parent from their child is detrimental." *Miller*, 670 S.W.2d at 593. There is likewise no reason to assume it is detrimental for a mother and her children to carry the same surname. *In re Wheat*, 794 S.W.2d at 714.

With the foregoing principles in mind, we find no abuse of discretion by the trial court in ordering the name change. The social worker testified that B__ L__ W__ was a "troubled child" who first asked about the name change after she had been returned to the custody of her mother.

**2.** Rule 95.03 reads, in part: "When a minor files a petition for change of name the written consent of each known parent shall be filed. If the written consent of each known parent is not filed, a copy of the petition together with a notice stating the date of the hearing shall be served on each known parent not consenting...." Rule 95.04 reads: "The court shall order the desired change of name if it finds that the change would be proper and not detrimental to the interests of any other person."

She further testified that the notoriety of the Wollweber name was causing the child difficulty. We find no substantial evidence that the name change for B— L— W— would be detrimental to the interest of any person, including Wollweber. *See In re Wheat,* 794 S.W.2d at 714. We do find substantial evidence that the name change would be in the best interest of B— L— W—.

We affirm.