Wesley J. MORRIS, by his next friend Cassandra COPE, and Cassandra Cope, Appellants,

v.

Troi Gilpin MORRIS, Respondent.

No. WD 51220.

Missouri Court of Appeals, Western District.

May 14, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 1996.

Application to Transfer Denied Aug. 20, 1996.

Paul Graham, Columbia, for appellants.

Marilyn Gaeth, Columbia, for respondent.

Before SPINDEN, P.J., and SMART and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

Cassandra Cope, the unmarried mother of Wesley J. Morris, complains to us that the circuit court refused to change her son's surname. She was living with the boy's father, Troi Gilpin Morris, when the boy was born on September 29, 1993, and she gave him his father's surname. After they quit living together, Cope decided to change her son's surname to either Cope–Morris or Morris–Cope. Troi Morris did not consent to the change.

The circuit court's refusal to change the boy's name is the only issue Cope appeals from the circuit's order of May 15, 1995, adopting the findings and recommendations of a family court commissioner concerning custody and child support. She contends that the circuit court had no evidence to support a conclusion that the proposed name change would be detrimental to her son or to anyone else. She argues that the circuit court's discretion in the matter was "narrow," and she asks us to reverse the circuit court's judgment for abusing its discretion and to declare that the name change is proper as a matter of law.

Cope acknowledges that the circuit court has discretion to deny a petition for a name change. The issue is how much.

In *R.K.-T.S. by V.T. v. R.S.*, 819 S.W.2d 749, 750 (Mo.App.1991), involving a proposed name change for an illegitimate child, this court said:

> The trial court's scope of discretion to deny a child's name change petition is narrow since Missouri law favors the ability of the individual, including a child, to legally change his name.... Missouri law provides little direction with regard to what factors are to be considered when contemplating a name change for a minor child.

This court, however, later said, in *Cobb by Webb v. Cobb*, 844 S.W.2d 7, 9 (Mo.App.1992), "The trial court has *wide* discretion and should be guided by what is in the best interest of an illegitimate child[.] ... Neither parent has an absolute right for an illegitimate child to bear that parent's surname."[1]

Endeavoring to resolve the apparent conflict, we look back to the first case to declare that the court's discretion is "narrow," *In the Matter of Natale*, 527 S.W.2d 402 (Mo.App. 1975). In that case, this court's Eastern District considered an *adult* petitioner wanting to change her name while she was still married. It declared, "The scope of discretion to deny a petition for change of name is narrow." *Id.* at 405.

The first case declaring the courts' discretion in considering a child's name change was *Kirksey v. Abbott*, 591 S.W.2d 751, 752 (Mo. App.1979). In this paternity action, the court said, "While there is a paucity of precedent on this question, it is apparent that the court has *wide* discretion and should be guided by what is in the best interests of the child. Neither parent has an absolute right for the child to bear his or her name."[2] The *Kirksey* court did not cite or otherwise acknowledge the *Natale* decision.

After *Kirksey*, the General Assembly enacted § 210.841, RSMo 1994, to govern paternity actions. The statute empowered the courts to enter judgment on "any matter in

---

1. We added the emphasis.

2. We added the emphasis.

the best interest of the child." *See Cobb,* 844 S.W.2d at 8.

The next name change case for a child after *Kirksey* was *In re Wheat,* 794 S.W.2d 710 (Mo.App.1990). The *Wheat* court, relying on *Natale,* declared that a court's discretion in considering any name change is narrow. The *Wheat* court did not acknowledge *Kirksey,* but the case was not a paternity action.

Then came *R.S.,* 819 S.W.2d at 749, which was not a paternity action but involved an illegitimate child. It relied principally on *Wheat* to conclude that the circuit court's discretion in ruling on any name change, including an illegitimate child's, was narrow.

After *R.S.* came *In the Interest of B ___ L ___ W ___ By Ellen K ___ v. Wollweber,* 823 S.W.2d 119 (Mo.App.1992), which involved an illegitimate child but was not a paternity action. Still, the *Wollweber* court, relying on *Kirksey,* concluded that an illegitimate child's name change presents an exception which accords the courts wide discretion "guided by what is in the best interests of the child." 823 S.W.2d at 122.

The latest name-change case involving a child was *Cobb,* 844 S.W.2d at 7. It was a paternity action. The court relied on § 210.841 and *Kirksey* to conclude that the courts had "wide discretion" to rule on the proposed name change. The court did not cite *Natale* or *Wheat.*

■ The apparent common thread running through these cases is that when the courts are considering a paternity action, they have "wide discretion," not the "narrow discretion" typical to name changes. *Wollweber,* however, is inconsistent with this line of analysis. *Wollweber,* like *R.S.,* was not a paternity action but, contrary to the holding in *R.S.,* accorded the court "wide discretion" in a case involving an illegitimate child. We need not resolve the apparent conflict because our case is a paternity action, and precedent clearly establishes that the circuit court had wide discretion in reviewing the proposed name change for young Morris.

■ A family court commissioner first reviewed Cope's request that her name be added to her son's surname. Without explanation, the commissioner recommended that the requested name change be denied. The circuit court accepted the recommendation. Because of the wide discretion accorded the circuit court on this issue, we should accept the court's ruling unless it is:

> [C]learly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (Mo. banc 1988).

■ Neither side offered extensive evidence concerning the name change. Cope offered this testimony to a family court commissioner concerning her desire to change her son's surname:

> Q. Do you think [the name change] would help him with his identity when he grows up?
>
> A. Yes, I do.
>
> Q. All right.
>
> A. And may I say something?
>
> Q. Yeah, do you have any other reasons?
>
> A. In the event that I ever marry, I will retain my maiden name.[3]

Troi Morris explained his reason for opposing the proposed change: "Wesley has— can have a lot of pride in his last name. He can—his last name will mean as much as my last name means to me. And I want him to have that. It's my—[h]e's going to be living with his mother. It's just what I've got to give to Wesley, and I want him to have it." Complementing this testimony was evidence that Morris had lived with his son for about six months and wanted to maintain a relationship with him. He expressed willingness to pay child support and agreed to a visitation schedule.

---

**3.** In a post-trial motion, Cope filed a motion *pro* *se* which she signed as Cassandra Cope–Brooks.

The circuit court could have appropriately concluded that the proposed name change would unduly interfere with Troi Morris' relationship with his son, and the record shows that even if the name change were granted, it would not necessarily result in the son's name being the same as that of his custodial parent. We do not discern an abuse of discretion. We, therefore, affirm the circuit court's judgment.

All concur.