In re the Matter of: Lilly Stephanie **HALVERSON, and Keltan Lynn Halverson, Minors, by their next friend Summer N. SUMNERS,**

Summer N. Sumners, Respondent,

v.

**Denver Paul Halverson, Appellant.**

No. SD 31174.

Missouri Court of Appeals,
Southern District,
Division One.

March 12, 2012.

James M. Owen, Springfield, MO, for Appellant.

Susan Appelquist, Springfield, MO, for Respondent.

---

1. Section 452.700 et. seq. Unless otherwise indicated, all statutory references are to

DON E. BURRELL, Presiding Judge.

This appeal arises from a judgment that changed from "Halverson" to "Sumners" the surname of Denver Paul Halverson's ("Father") two minor children ("the Children") as requested by the Children's mother, Summer N. Sumners ("Mother"). Father claims the trial court erred in: 1) finding the name change would serve the Children's best interests because it was against the weight of the evidence; and 2) failing to dismiss Mother's petition because the Children were under the jurisdiction of an Iowa court "on matters of custody and support" such that the entry of a judgment by a Missouri court could be "contrary to the terms of the Uniform Child Custody Jurisdiction and Enforcement Act ("UC-CJEA"[1]). Finding no merit in either of Father's claims, we affirm.

### Applicable Principles of Review

"In a court tried case, the decision of the trial court must be affirmed unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Wright v. Buttercase ex rel Buttercase,* 244 S.W.3d 174, 176 (Mo.App. W.D.2008). The judgment is presumed correct, and the appellant has the burden of proving it erroneous. *Strobl v. Lane,* 250 S.W.3d 843, 844 (Mo.App. S.D.2008). Whether a trial court has subject-matter jurisdiction is a question of law we review *de novo. McCracken v. Wal–Mart Stores East, LP,* 298 S.W.3d 473, 476 (Mo. banc 2009).

We defer to the trial court's witness credibility determinations and its resolution of disputed facts. *Houston v. Crider,* 317 S.W.3d 178, 183 (Mo.App. S.D.

RSMo Cum.Supp.2010. All rule references are to Missouri Court Rules (2011).

2010). The trial court has discretion regarding a change of name for a child, and we will affirm its decision "unless it is '[c]learly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]' " *Morris by Cope v. Morris*, 926 S.W.2d 87, 89 (Mo.App. W.D.1996) (quoting *State ex rel Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988)).

■ "On appeal, this Court views the evidence and all reasonable inferences in the light most favorable to the judgment and disregards all contrary evidence and inferences." *Hahn v. Tanksley*, 317 S.W.3d 145, 153 (Mo.App. S.D.2010). The following summary of the facts is presented in accordance with this standard.

### Facts and Procedural Background

#### Pre-trial

Mother, as the Children's next-friend, filed her petition in June 2010. The Children were approximately 5 and 7 years of age at that time. The petition was also accompanied by the following "AFFIDAVIT AS REQUIRED" ("affidavit"), which bore Mother's acknowledgment and notarized signature.

1. [The C]hildren have resided with [Mother] since March 1, 2008 at [Mother's] address in Aurora, Lawrence County, MO and have been in the legal and physical custody of [Mother] since birth.

2. [Mother] has not participated in any capacity in any other litigation concerning the custody of [the C]hildren in this or any other state.

3. [Mother] has no information of any custody proceeding concerning [the C]hildren pending in a court of this or any other state.

4. [Mother] does not know of any person who is not already a party to these proceedings who has physical custody of [the C]hildren or claims to have custody or visitation rights with respect to [the C]hildren other than the biological parents of [the C]hildren.

Father's motion to dismiss alleged that jurisdiction was proper in Winneshiek County, Iowa because a court in that jurisdiction had previously issued a "Custody and Visitation Decree" (in October 2006) regarding the Children. Father also alleged "[a] separate action commenced involving the child support for" the Children in Winneshiek County, Iowa. The motion did not state the status of the alleged child support action. Father's motion to dismiss was subsequently denied by the trial court and the matter proceeded to trial.

#### The Trial

Father attended (with counsel) the trial on Mother's name-change petition in December 2010. Father fully participated at trial and testified in opposition to the requested change of name.[2] Mother testified that she and the Children were presently living in Aurora with her husband, Jerry Lee Sumners ("Husband"), and their infant child. The Children were born in Iowa and moved with Mother to Missouri in March 2008. Father is listed as the Children's father on their birth certificates.

A custody and visitation degree was issued by the District Court of Winneshiek County, Iowa in October 2006. That decree gave Mother the right to deny any visitation by Father with the Children that she deemed either "unreasonable" or

---

2. Father's mother also testified that she was opposed to changing the Children's last name.

"[wa]s not in the best interest of [the C]hildren." A child support order was also entered in Iowa, and Father was paying $88 per week in child support via wage withholdings as a result of that order.

The Children were enrolled in school under the last name of "Halverson." When asked what name the Children used in school, Mother stated, "They have written 'Sumners' down quite a bit, and just since it's not legal, it's Halverson that they write." When she was asked how the eldest child "sometimes" wrote her name, Mother replied, "[first name] Sumners." [3] During cross-examination, Mother testified that it was the eldest child who first brought up the idea of changing her name.

Mother said she favored changing the Children's surname to Sumners because "[t]hat's our family name." Mother went on to explain that each family member regarded themselves as "a Sumners[,]" the Children called Husband "Dad," and the Children's infant half-sibling's last name was "Sumners." Mother did not "want it to be confusing for them, you know, through school[.]" On cross-examination, Mother confirmed that she had stated in an interrogatory answer that she believed it was in the best interests of the Children to change their surname because her last name is Sumners and the Children want to have the same last name as Mother "and their dad." Mother said the Children call Husband "Dad" by their own choice.

Mother also testified:

[Father] is their father. [Father] is their father. The person that they call "Dad" and that has been at their school activities, has done their health [sic], has talked to the principal about an issue, has taken them to church, has done everything, that is a dad. That's not a father. A dad and a father are two separate things. The person that they call "Dad" is that guy that's sitting at the back wall.

Mother had not stopped Father from contacting the Children. Father had not visited the Children in Missouri, but Mother had taken the Children to see Father's parents when she was visiting her own family in Iowa, and she believed that Father saw the Children during those visits.

Father had called the Children a total of six times after they moved to Missouri, three of which came after Mother filed her petition. Father had not sent any gifts for the Children after they moved to Missouri, with the exception that he sent Christmas presents the first year, misspelling the younger child's first name on the gift.[4] Mother was served in November 2010 with Father's Iowa motion to modify custody and visitation. That motion to modify was not admitted into evidence after Mother's counsel objected.

Husband testified that he was not the Children's father, but that they do call him "Dad." He is "all for" that and is "the person who takes care of them." When asked if he had discussed adopting the children with anyone, Husband replied, "No. We don't want to mess with [Father's] rights to have visitation with the kids or anything. All we simply want is for them to share the same last name with their parents." Husband went on to clarify that they had talked about adoption, but they did not have the money to do it and if Father "wants to have something to do with them, that's fine. We are not against that."

3. Mother was not asked the same question about the younger child.

4. The younger child's first name is also misspelled in the style of Father's briefs and on the style of the legal file prepared on his behalf.

*Post-trial*

The trial court entered its judgment granting the requested change of name, finding "that said change of name is proper, that it will not be detrimental to the interests of any other person, and that it is in the best interests of [the Children]." The judgment does not address the issue of any potential jurisdiction over the Children by an Iowa court or make any detailed findings of fact.

After Father filed his motion to set aside the judgment, Mother filed a "copy of [a] dismissal in Iowa case" on February 17, 2011.[5] Before ruling on Father's motion to set aside the judgment, the trial court took "judicial notice of [the] order of dismissal filed on 2–1–11 in Winneshiek County, Iowa finding that Iowa does not have jurisdiction over [the] child-custody determination. Motion to set aside judgment or in the alternative to reconsider is overruled. Copy to Counsel. [Judge's

signature noted.]" This appeal timely followed the trial court's denial of Father's post-trial motion.[6]

## Analysis

### Point I—Jurisdiction of the Trial Court

■ ■ Father's first point queries:

Whether the trial court erred and misapplied the law by failing to dismiss the petition upon [Father's] motion ... because the [C]hildren were under the jurisdiction of the Winneshiek County (Iowa) District Court on matters of custody and support and Iowa law allows for name changes through custody proceedings and the entry of a judgment changing the name of [the Children] could lead to inconsistent results having a detrimental impact on [the C]hildren contrary to their best interests and contrary to the terms of the [ ] (UC-CJEA).[7]

---

5. Mother included a purported copy of this document in the appendix to her brief, but it was not included in the legal file.

6. The trial court's ability to take judicial notice of the purported Iowa order of dismissal is not challenged on appeal.

7. Father's first point purports to challenge the trial court's denial of his motion to dismiss. "Ordinarily a denial of a motion to dismiss is not final and thus not appealable." *In re Marriage of DeLeon*, 804 S.W.2d 801, 802 (Mo.App. E.D.1991). "An order denying a motion to dismiss, however, can be considered as part of the appeal from a final judgment." *Raskas Foods, Inc. v. Southwest Whey, Inc.*, 978 S.W.2d 46, 48 n. 3 (Mo.App. E.D.1998). *See also Lancaster v. Simmons*, 621 S.W.2d 935, 940 (Mo.App. W.D.1981) ("Although an interlocutory order is generally not itself appealable, the action of the court in that regard becomes reviewable as part of an appeal taken from the final order thereafter entered"). Our review of Father's claim is complicated by the deficiencies of his brief. Point one questions a trial court action and does not expressly assert error as required by Rule 84.04(d). *Thomas v. Lloyd*, 17 S.W.3d

177, 189 (Mo.App. S.D.2000) ("[F]raming a point in terms of 'whether' an action is error is not a proper briefing practice"). The point also fails to state the legal reason why the trial court erred or why that legal reason, in the context of the facts of this particular case, supports his claim of reversible error as required by Rule 84.04(d)(1)(B) and (C). Father offers no explanation of why the previous custody and support judgment entered in Iowa and the fact that a name change action is cognizable in an Iowa custody proceeding barred the trial court from acting on Mother's name-change petition. *See FIA Card Serv., NA. v. Hayes*, 339 S.W.3d 515, 518 (Mo.App. E.D.2011) (the point must state the ruling that is challenged, the rule of law that the trial court should have applied and the evidence that supports the rule). Despite these deficiencies, we are mindful that the best interests of minor children are at issue, and we exercise our discretion to review Father's first point, as best we understand it. *See In re Marriage of Hayes*, 12 S.W.3d 767, 769 (Mo. App. S.D.2000) (deficient point in appeal regarding name change of minor would be reviewed as court understood the contentions because a child was involved).

Father asserts that "[t]he failure to comply with provisions of the UCCJEA deprived the Circuit Court of Lawrence County of subject matter jurisdiction in regard to the change of the names of [the Children], which is a custodial proceeding in the state retaining exclusive and continuing jurisdiction over the custody of [the Children]." [8]

Father cites no authority for the proposition that the change of a minor child's name is a "custodial proceeding" under the UCCJEA. Mother contends the trial court did not err in denying Father's motion to dismiss because his reliance on the UCCJEA to control jurisdiction is misplaced and that the UCCJEA "has no provision that extends to matters pertaining to change of name." We deny Father's point for a more fundamental reason.

■ "Missouri courts recognize two types of jurisdiction—personal jurisdiction and subject matter jurisdiction—and both are based on constitutional provisions." *Hightower v. Myers,* 304 S.W.3d 727, 733 (Mo. banc 2010). Missouri's Constitution provides that "[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal." Art. V, sect. 14.[9] Therefore, subject matter jurisdiction "cannot be removed by statutory provisions." *Id.* at 734.[10]

The UCCJEA was adopted in Missouri upon the repeal of the Uniform Child Custody Jurisdiction Act, and became effective on August 28, 2009. *Ketteman v. Ketteman,* 347 S.W.3d 647, 653 n. 2 (Mo.App. W.D.2011). As a statute, it cannot change Missouri's constitutional grant of subject matter jurisdiction to the trial court. *See Hightower,* 304 S.W.3d at 734. Having the necessary jurisdiction over the matter, the trial court did not err in refusing to dismiss Mother's petition. Point I is denied.[11]

---

8. The argument portion of Father's brief also asserts that the affidavit attached to Mother's petition was false, that Mother's act of including it was an acknowledgment that the Children were subject to an order in another state that could be modified, and that the "affidavit is required in this matter because Missouri case law states that only one [c]ourt can entertain jurisdiction on one subject matter to protect the child from conflicting results in different courts[,]" citing *B.L.W. by Ellen K. v. Wollweber,* 823 S.W.2d 119, 122 (Mo.App. S.D.1992). These issues are not included in Father's point relied on. "Issues that are raised only in the argument part of the brief and are not contained in the point relied on are not preserved for review." *In re Marriage of Fritz,* 243 S.W.3d 484, 488 (Mo.App. E.D. 2007). In any event, we observe that *B.L.W. by Ellen K.* involved a child under the jurisdiction of the juvenile division of the circuit court in Missouri. 823 S.W.2d at 120. Even though the child was under the exclusive original jurisdiction of the juvenile division for purposes of protective custody, the Eastern District held that the trial court at issue still had jurisdiction for purposes of hearing the child's petition for change of name. *Id.* at 122.

9. Constitutional references are to the Missouri Constitution (1945).

10. For instance, in *Hightower,* the Supreme Court stated that provisions of the former Uniform Child Custody Jurisdiction Act "do not remove subject matter jurisdiction from the court." *Id.* at 733.

11. Even if it were controlling on this question, the title of the UCCJEA refers to child "custody" and defines a "Child custody proceeding" as:

> [A] proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence in which the issue may appear. The term shall not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under sections 452.850 to 452.915.

Section 452.705(4).
Father points to no authority suggesting that a child's name is a part of his legal custody,

*Point II—Best Interests of the Children*

■■■■■ Father's second point asserts that "the weight of the evidence was established [sic] that the name change was not in the best interest of [the C]hildren and did not meet the requirements necessary to order the change of the name of a minor child." [12]

[A]n against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston*, 317 S.W.3d at 187.

In the argument section that follows Father's point, he asserts that "[t]here was no evidence introduced at [the] hearing as to what was in [the Children's best interest," and that the only evidence in support of the petition was the testimony of Mother and Husband as to what each thought was appropriate. Father also argues that Mother's failure to consult "with anyone who would have any professional insight into the impact of this change on [the Children]" was "simply insufficient."

■■■■ Although Father's point appears to assert an against-the-weight-of-the-evidence challenge, the argument section that follows his point reads more like a questioning of "whether" the judgment is supported by substantial evidence. Issues raised in argument that are not contained in the point relied on are not preserved for appellate review. *Fritz*, 243 S.W.3d at 488.

"Multifarious points preserve nothing for review." *Fritz*, 243 S.W.3d at 487.

Father's point also does not identify what required elements were not satisfied for the change of name. In his argument, Father contends the petition did not assert that a change of surname would be in the best interests of the Children, but such an assertion is not expressly required by either section 527.270, RSMo 2000, or Rule 95.01. Father's counsel elicited testimony from Mother on cross-examination that indicated why she believed the name change would be in the Children's best interests, other evidence of best interests was presented, and after hearing the evidence, the trial court made such a finding.

As with point one, we exercise our discretion to review Father's second point because the best interests of minor children are at issue. *See Hayes*, 12 S.W.3d at 769.

---

physical custody, or visitation. The remainder of Father's first point does not impact the denial of his motion to dismiss. We do not decide whether "Iowa law allows for name changes through custody proceedings" as that does not alter the fact that the trial court did not lack the jurisdiction necessary to hear and decide this matter.

**12.** The second point is also faulty because not only is it phrased as a question (like point one), but it challenges the judgment based upon two rulings—that the change of name is in the Children's best interests and that it met the proper requirements for a change of name. "When an appellant makes the entire judgment one error and lists multiple grounds therefor, the result is that the point contains multiple legal issues. Separate issues should be stated in separate points relied on." *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279, 283 n. 2 (Mo.App. E.D.1999).

As to his challenge to the "weight" of the evidence in support of the judgment, "an against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment[.]" *Houston*, 317 S.W.3d at 186. An against-the-weight of the evidence challenge is about "the probative value of that [presumed substantial] evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact." *Id.* But when asserting either challenge, the appellant must first "identify all of the favorable evidence in the record supporting the existence of that proposition [which is necessary to sustain the judgment.]" *Id.* at 187. It is not appropriate for this court "to devise and articulate its own demonstration of how the omitted favorable evidence ... is not substantial evidence or is lacking in probative value as compared to the totality of the evidence, so as to be against the weight of the evidence." *Id.* at 189.

The proposition necessary to sustain the judgment at issue here is that the change of name was in the Children's best interests. Our *ex gratia* review of the record reveals substantial evidence favorable to that proposition. Father fails to acknowledge that evidence in his brief. As a result, his second point never makes it out of the starting gate. Point II is also denied, and the judgment of the trial court—presumed correct—is affirmed.

RAHMEYER, and LYNCH, JJ., Concur.