

# Missouri Court of Appeals
## Southern District

## In Division

DARRELL WAYNE TURNER,                 )
                                      )
    Plaintiff-Respondent,             )
                                      )
    vs.                               )    No. SD37432
                                      )
LINDA JEAN JORDAN,                    )    **Filed:  November 22, 2022**
                                      )
    Defendant-Appellant.              )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

The Honorable Michael M. Pritchett, Judge

**<u>AFFIRMED</u>**

Linda Jean Jordan ("Sister") appeals the circuit court's judgment in favor of her brother, Darrell Wayne Turner ("Brother"), that rescinds a general warranty deed ("the Deed") signed by the parties' mother, Shirley Turner ("Mother"), prior to her death.  The court found Mother lacked the requisite mental capacity to execute the Deed that purported to transfer all of her property and assets, without consideration, to Sister.  In her sole point on appeal, Sister contends that the court's judgment was "against the weight of the evidence in that [Brother] failed to show by clear and convincing evidence that [Mother] lacked sufficient mental capacity at the time the [D]eed was executed."  Because Sister fails to demonstrate any merit to her claim, we affirm.

1

## Factual and Procedural Background

Mother was born in 1937 and, at all relevant times, was a widow. For a time, Mother lived with a friend, Ray Huddleston ("Huddleston"). Up until early 2012, Mother and Huddleston were able to take care of her daily needs.

On May 9, 2012, Mother met with her physician, Dr. Kenneth Li ("Dr. Li"), complaining that she was suffering from "acute confusion." Dr. Li diagnosed Mother with dementia and ischemic cerebrovascular disease, i.e., a "hardening of the arteries, blockage of arteries that feed the brain tissue." An MRI, conducted a few days later, revealed that Mother had suffered multiple strokes, one of which "affected the right front part of the brain, which is a part that affects the thinking process."

After May 2012, Mother's mental status substantially changed according to her grandson, Wayne Turner. Huddleston moved out sometime during the following summer. Sister then began to provide care for Mother. By September 2012, Sister believed that Mother needed care twenty-four hours a day, seven days a week. On January 3, 2013, Sister drove Mother to a lawyer's office where Mother signed the Deed.

Throughout this timeframe, Dr. Li examined Mother several additional times—on June 12, 2012; July 24, 2012; August 24, 2012; September 18, 2012; November 16, 2012; January 2, 2013; and January 17, 2013. Sister would accompany Mother to such doctor visits because she believed that Mother was incapable of relaying a doctor's statements back to her. At each visit, Dr. Li diagnosed Mother with dementia and/or ischemic cerebrovascular disease. On January 2, 2013, Dr. Li prescribed Aricept to treat Alzheimer's dementia.

Dr. Li testified that, in January 2013, Mother was "not capable of making decisions on her own behalf from a medical and financial standpoint." Dr. Li explained that, because of her limited mental capacity, Mother's decision making should have been limited to "like where she

2

wanted to live, what kind of clothes she wants to get, . . . how much money she may want to go ahead and give a grandson for his birthday."

Mother's condition did not change between January 2, 2013, and February or March 2013, which is when Sister hired a relative, Karen Nelson ("Nelson"), to help with Mother's care. On one day during the first week that Nelson started helping Mother, Nelson allowed Mother to use the stove and was reprimanded by Sister. Sister believed that if Mother was allowed to cook, because of her mental condition, she would hurt herself or possibly burn the house down. Nelson agreed that Mother could not be left alone and required constant care.

The circuit court issued its judgment following the bench trial at which the court received evidence concerning Mother's mental capacity. The court stated therein that, under the legal standard for determining whether the evidence satisfies the threshold to set a deed aside, it was required to consider:

> "The grantor's mental capacity on the date of execution may be demonstrated with evidence of the grantor's condition before and after the execution. The issue to be determined is whether the grantor had the mental capacity at the time of execution of the deed sufficient to understand the nature of the transaction, the extent of his property and the ability to recognize the objects of his bounty." [*Gifford v. Geosling*, 951 S.W.2d 641, 644 (Mo. App. W.D. 1997) (citations omitted).]

Ultimately, the court found Brother proved by clear and convincing evidence that Mother did not have the requisite mental capacity to execute the Deed on January 3, 2013. Based upon the foregoing, the court granted Brother's count seeking rescission of the Deed. Sister timely appeals that judgment.

### Standard of Review

In a court-tried civil case, "[t]he judgment of the trial court will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012) (quoting

3

*White v. Director of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010)).  The judgment is

presumed correct and the appellant has the burden to prove error.  *Strobl v. Lane*, 250 S.W.3d

843, 844 (Mo. App. S.D. 2008).  "[W]e view all evidence and inferences in the light most

favorable to the judgment and disregard all contrary evidence and inferences."  *Ortmann v. Dace

Homes, Inc.*, 86 S.W.3d 86, 88 (Mo. App. E.D. 2002).

### Discussion

In her sole point relied on, Sister specifically, and only, asserts an against-the-weight-of-

the-evidence challenge to the circuit court's judgment.  However, in her argument following her

point, Sister does not follow, or even attempt to follow, the analytical framework necessary to

sustain such a challenge.

The analytical framework for an against-the-weight-of-the-evidence challenge—the

challenge Sister purports to make—involves four sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to
> sustain the judgment;
> (2) identify all of the favorable evidence in the record supporting the existence of
> that proposition;
> (3) identify the evidence in the record contrary to the belief of that proposition,
> resolving all conflicts in testimony in accordance with the trial court's credibility
> determinations, whether explicit or implicit; and,
>  (4) demonstrate why the favorable evidence, along with the reasonable inferences
> drawn from that evidence, is so lacking in probative value, when considered in the
> context of the totality of the evidence, that it fails to induce belief in that
> proposition.

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010).

Here, the challenged proposition necessary to sustain the judgment, as stated by Sister in

her point, is that Mother "lacked sufficient mental capacity at the time the [D]eed was executed."

In the argument section following her point, however, Sister appears to assert that *none* of

Brother's evidence supports that proposition.  According to Sister, "[i]nstances of illness,

imperfect memory, forgetfulness, physical and intellectual weakness associated with old age, and

mental confusion are generally *not sufficient evidence to invalidate a deed.  **McCoy v. McCoy***, 227 S.W.2d 698, 704 (Mo. 1950)." (Emphasis added.)  Sister then merely acknowledges that Mother was diagnosed with dementia and claims that the "bulk" of the testimony from Brother's witnesses "was general testimony related to [Mother's] general forgetfulness."  Thus, by framing Brother's evidence in this manner, Sister attempts to lump it into the types of evidence that, under ***McCoy***, is "not sufficient evidence to invalidate a deed."  Sister even argues in her conclusion that Brother "*failed to present* by clear and convincing evidence" that Mother lacked the mental capacity to execute the Deed "in that the testimony presented by [Brother]'s witnesses was of a general nature of [Mother]'s illness, and *failed to show* [Mother] was incapacitated at the time the Deed was executed." (Emphasis added.)  If Sister acknowledges that there was evidence supporting the court's lack-of-capacity finding, Sister does not identify that evidence as such in her argument section.

> As to [a] challenge to the "weight" of the evidence in support of the judgment, "an against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment[.]" *Houston*, 317 S.W.3d at 186.  An against-the-weight of the evidence challenge is about "the probative value of that [presumed substantial] evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact." *Id.*  But when asserting either challenge, the appellant must first "identify all of the favorable evidence in the record supporting the existence of that proposition [which is necessary to sustain the judgment.]" *Id.* at 187.  It is not appropriate for this court "to devise and articulate its own demonstration of how the omitted favorable evidence . . . is not substantial evidence or is lacking in probative value as compared to the totality of the evidence, so as to be against the weight of the evidence." *Id.* at 189.

*In re Halverson ex rel. Sumners*, 362 S.W.3d 443, 451 (Mo. App. S.D. 2012).

In sum, Sister's argument section reads as if she is asserting a not-supported-by-substantial-evidence challenge and not, as she provides in her point relied on, an against-the-weight-of-the-evidence challenge.  "Issues raised in argument that are not contained in the point

relied on are not preserved for appellate review." *Id.* at 450. Our *ex gratia* review of the record reveals substantial evidence favorable to the factual proposition that Mother "lacked sufficient mental capacity at the time the [D]eed was executed." Sister fails to address any of this evidence.[1] Her point, therefore, "never makes it out of the starting gate." *Id.* at 451. Point denied.

## Decision

The circuit court's judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

[1] Brother correctly notes in his brief that Sister failed to provide a "fair and concise statement of the facts" as required by Rule 84.04(c) in that "[d]espite a full day of trial that produced an 87-page transcript (plus Dr. Li's deposition and numerous medical records introduced at trial) and the trial court issuing a five-page Judgment laying out much of the relevant testimony and evidence, [Sister]'s Statement of Facts consists of seven (7) sentences." Brother also correctly notes that Sister "failed to provide Dr. Li's deposition and [Mother]'s medical records, which were admitted into evidence at trial, as part of the record on appeal pursuant to Rule 81.16." All rule references are to Missouri Court Rules (2022). "Where . . . exhibits are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appellant." ***In re Carl McDonald Revocable Trust dated Oct. 1, 1979)***, 942 S.W.2d 926, 932 (Mo. App. S.D. 1997).